## In the Matter of Proving the Will of WILLIAM COLEMAN, Deceased.

Where the probate of a will is contested on the ground of the unsoundness of mind of the testator, a physician who has attended upon the deceased in a professional capacity, is not a competent witness for the contestants to testify from knowledge acquired while so attending him as to his mental incapacity. (Code of Civil Pro. § 834.)

The prohibition of the Code of Civil Procedure (§ 835), against the disclosure by an attorney of a communication by his client to him or his advice thereon, in the course of his professional employment, applies to instructions given, by one proposing to execute a will, to an attorney employed to draw it, and to conversations had with the attorney for the purpose of enabling him to carry out the instructions.

Where, however, the attorney is requested by the testator to sign the attestation clause of the will as witness thereto, this is an express waiver within the meaning of said Code (§ 836) of the pledge of secrecy. so imposed and authorizes the disclosure.

The provision of the Code authorizing such a waiver by the client does not require it to be in writing or in any particular form or manner or at any particular time or place; it must be an express waiver made in such a manner as to show the testator intended to exempt his attorney, in the particular case, from the prohibition.

A testator, in requesting a person to sign, as a subscribing witness to his will, is presumed to know the obligations assumed by the witness in respect to the proof of the will; among other things, the duty to testify as to the circumstances attending its execution, including the mental condition of the testator at that time, as evidenced by his action, conduct and conversation.

The act of a testator, therefore, in requesting his attorney, who drew his will, to become a witness to it, is clearly indicative of an intention to waive the statutory prohibition, and so leave the witness free to perform the duties of the office assigned him.

(Argued October 4, 1888; decided November 27, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, made June 29, 1885, affirming a decree of the surrogate of Washington county.

The nature of the action and the facts, so far as material, are set forth in the opinion.

*James C. Rogers* for appellant. The testator was not, at the time the will was executed, of sufficiently sound mind and

memory to render it valid. (*Clark* v. *Clark*, 1 Paige, 171; *Delafield* v. *Parish*, 25 N. Y. 25–105; *Forman* v. *Smith*, 7 Lans. 443; *Dumond* v. *Kiff*, Id. 465, 467; *Van Guysling* v. *Van Kuren*, 35 N. Y. 70; *Kinne* v. *Johnson*, 60 Barb. 69.) The testimony of the family physicians was competent. (*Staunton* v. *Parker*, 10 Hun, 55; *Steele* v. *Ward*, 40 id. 555; *Pierson* v. *People*, 76 N. Y. 424; 77 id. 564; *Parish Will Case*, 25 id. 115.) The testimony of Mrs. Coleman, the executrix of the will and devisee under it was competent, her testimony as to personal transactions and communications with her husband not having been given in her own behalf or interest, but directly against her interest. (*Ely* v. *Clark*, 19 Hun, 37; *Hill* v. *Alvord*, Id. 77; *Pursell* v. *Fry*, id. 595; *Smith* v. *Meaghan*, 28 id. 423, 425; *Talbot* v. *Talbot*, 23 id. 17–21; 1 Greenl. on Ev. § 410; *Clark* v. *Vorce*, 19 Wend. 232; *Smalley* v. *Smalley*, 1 Am. Pro. R. 566; *Whelpley* v. *Loder*, 1 Dem. 378.) The testimony of two out of three of the subscribing witnesses, who were proponent's counsel in the case, as to his communications with them and their advice, was incompetent. (Code, § 835; *Bacon* v. *Frisbe*, 15 Hun, 26; *S. C.*, 80 N. Y. 394; *Root* v. *Wright*, 84 id. 72; 18 id. 550; 56 id. 632; *Loveridge* v. *Hill*, 96 id. 222; *Westover* v. *Ætna Life Ins. Co.*, 99 id. 56; *Renihan* v. *Dennin*, 103 N. Y. 573; *People* v. *Murphy*, 101 id. 126; Reviser's note to section 836 in Throop's Code.) Very slight evidence of the improper exercise of undue influence between parent and child is required. (*Mowry* v. *Silver*, 2 Bradf. 133; *Forman* v. *Smith*, 7 Lans. 443; *Sears* v. *Shafer*, 6 N. Y. 268–272; *Rollwagen* v. *Rollwagen*, 63 id. 504.)

*A. D. Wait* for respondent. The court erred in allowing the testator's widow to testify as to the character of the sickness with which he was afflicted about five years before his death, the manner in which it commenced and in which he was affected. (*Holcomb* v. *Holcomb*, 95 N. Y. 316, 324, 325; *Lane* v. *Lane*, Id. 494, 501, 502.) Where the change of

testamentary intention is made upon a reason satisfactory to the testator, it furnishes no ground for setting aside the will, although the reason may seem unjust to a court investigating the question. (*Horn* v. *Pullman*, 72 N. Y. 270, 276, 278.) There was a total failure of proof sufficient to avoid the will on the ground of undue influence. (*Clapp* v. *Fullerton*, 34 N. Y. 190, 196, 197; *Horn* v. *Pullman*, 72 id. 269, 278; *In re Martin*, 98 id. 193; *Hewlett* v. *Elmer*, 103 id. 161; *Hebbard* v. *Haughian*, 70 id. 62; *Sheridan, as Executor*, v. *Houghton*, 16 Hun, 628; *In re Will of Chapman*, 27 id. 573; *In re Will of Chase*, 41 id. 204.) The communications testified to by the attorneys of the testator, who signed the will as subscribing witnesses, as made to them by the testator, were not such as an attorney or counselor is prohibited from disclosing under section 835 of the Code. Under the issue of fraud, imposition and undue influence raised by contestant, they were clearly competent and admissible as a part of the *res gestæ*. (*Clapp* v. *Fullerton*, 34 N. Y. 190, 194, 195; *In re Freeman*, 46 Hun, 458, 463; *In re Ross*, 87 N. Y. 514.) The contestants, Mrs. Coleman and Seeley, were not competent witnesses as to personal transactions and conversations between them and testator. (Code, § 829; *Schoonmaker* v. *Wolford*, 20 Hun, 166; *Snyder* v. *Sherman*, 23 id. 139; *Lane* v. *Lane*, 95 N. Y. 494, 501.) This court will not reverse such a decree for an error in the admission or rejection of evidence, " unless it appears to the court that exceptant was necessarily prejudiced thereby." (Code, § 2545; *Horn* v. *Pullman*, 72 N. Y. 269; *Brick* v. *Brick*, 56 id. 144; *In re Ross*, 87 id. 514; *Snyder* v. *Sherman*, 88 id. 656.)

RUGER, Ch. J. The probate of the will of William Coleman, deceased, was contested before the surrogate by his widow and several of his children and grandchildren, upon the ground that he was not of sound mind and memory at the time of its execution, and its execution was procured through undue influence, fraud and intimidation exercised over him by Robert S. Coleman. The will was admitted to probate, and the decree was affirmed upon appeal by the General Term.

It is urged, upon this appeal, that the evidence produced before the surrogate by the contestants, as to the mental and physical weakness and incompetency of the testator to make a valid will, is so strong and conclusive, that this court should reverse the decision of the court below upon the facts.

It is not our purpose to go into a detailed history of the evidence, or comment upon the weight and force of the various facts and circumstances proved on the trial by the respective parties, to sustain their several positions, as it is not even claimed by the appellants, that there was no evidence to support the decree of the surrogate.    Their utmost contention is that the evidence is so persuasive and convincing, either of the mental incompetency of the testator or of the exercise of undue influence by the proponent in procuring the execution of the will, that the court should hold, as matter of law, that it was error for the surrogate to admit it to probate.

The argument of the appellants is based, to a large extent, upon evidence which was admitted on the trial against the objection of the proponent, and which we deem to be clearly inadmissible.    While we consider the case made by the contestants upon the evidence to be strong, and as presenting a serious question whether the testator was competent to make a valid will or not, yet the exclusion of the evidence improperly received on their behalf by the surrogate, would impair the force and strength of their case, and leave the evidence as to the testator's competency more nearly balanced than it would otherwise be.

A general outline of the facts will be sufficient to present the views we deem it necessary to express upon the determination of this appeal.    Robert S. Coleman, the only son of the testator, was the proponent of the will and one of the three executors named therein; the others having renounced or declined to act in that capacity.    The testator, at the time of its execution, was upwards of eighty years of age, and died within a year thereafter.    He was then possessed of property mainly consisting of real estate, of the value of about $40,000, and had several children and grandchildren who were in needy

circumstances, partially dependent upon him for support, but were not mentioned in or provided for by the will, although apparently the natural objects of his bounty. That instrument, after making slight provisions for two of his grandchildren, gave his personal property, together with a life estate in his homestead, to his widow, and the remainder thereof, together with a remainder in the homestead, to the proponent. Robert was by profession a lawyer, and, although living in his father's family and being supported by him until he was nearly forty years of age, had never rendered material assistance to the testator, in his business affairs and was not apparently regarded by him with favor, or as a proper or fit person to have the management and control of business, such as that in which the testator had theretofore been engaged.

Upon the trial much evidence was given on both sides in regard to the mental and physical condition of the testator during the three or four years preceding his death; but no direct evidence was produced as to any effort, on the part of the proponent, to procure the making of a will by his father, or to influence or dictate the nature of its provisions. The proof, on the part of the contestants, as to the exercise of undue influence, is based wholly upon inference sought to be drawn from the apparently unfriendly relations existing between the testator and his son; the alleged unnatural and inequitable disposition of the property, the advanced age of the testator and the absence of any apparent reason, except the assumed existence of some extraneous influence, for excluding the other children from a share in his estate. There was much evidence produced by the contestants as to the impairment of the mental and physical condition of the testator subsequent to 1877, when it was claimed that he had experienced a paralytic affection, which caused a gradual but continuous impairment of his faculties, down to the time of his death in April 1881.

This evidence was met on the part of the proponent by nearly an equal number of witnesses, who testified to facts and circumstances showing the continued mental soundness of the

testator's faculties, and his capacity to transact business affairs until after the execution of the will.

The evidence on the part of the contestants is subject to the criticism that much of it was given under the objection of the proponent, and was of doubtful admissibility upon the questions litigated. Aside from the evidence of Mrs. Coleman, the most material and important facts on the part of the contestants were undoubtedly proved by the witnesses, Mrs. Seelye, the daughter of the testator, and the two physicians, Drs. Clark and Little, who testified to the unsoundness of mind of the testator during the year 1877 and subsequent thereto, from knowledge acquired by them while attending him respectively in a professional capacity. This evidence was duly objected to by the proponent, but was admitted against such objection. So far as the evidence of the medical witnesses is concerned, there can be but little doubt of its inadmissibility, and it should have been disregarded by the surrogate in determining the question of the testator's mental and physical condition. It seems to us that this evidence falls clearly within the prohibition contained in section 834 of the Code, as illustrated and applied in recent decisions of this court. (*Grattan* v. *Met. Life Ins. Co.*, 80 N. Y. 296; *Edington* v. *Mut. Life Ins. Co.*, 67 id. 185; *Westover* v. *Ætna Ins. Co.*, 99 id. 56; *People* v. *Schuyler*, 106 id. 318; *Renihan* v. *Dennin*, 103 id. 574.)

It is perhaps not important that we should comment upon the propriety of the rulings on the trial in reference to the evidence on the part of the contestants, since, in any event, whether it be considered or not, we are of the opinion that the question of the testator's mental condition, and the exercise of undue influence over him, in respect to the execution of the will, was one of fact to be determined by the trial court. Whatever may be said of the evidence, we are clearly of the opinion that not only was there evidence upon which the decision of the surrogate could properly be supported; but there was no such preponderance as to the testator's mental

incapacity to make a valid will, as would have authorized a reversal by an appellate tribunal of the surrogate's decree determining that fact in favor of the proponent. (*In re Ross*, 87 N. Y. 514; *In re Cottrell*, 95 id. 333; *Hewlett* v. *Elmer*, 103 id. 161.)

The most material question in the case arises over the exception taken by the contestants to the admission of the evidence of the witnesses Hughes and Northrup, as to conversations had by them, respectively, with the testator at the time of receiving instructions in reference to a draft of the will offered for probate, and another drawn about two years previously by the same attorneys. The testimony given by these witnesses was undoubtedly very material and important in its bearing upon the issue tried, and if erroneously admitted would lead to a reversal of the judgment appealed from.

The evidence showed that the witnesses were a firm of lawyers, residing at Sandy Hill, and were employed by the testator in their professional capacity to draw such wills, and that the conversations testified to, were had with them for the purpose of enabling them to execute the instructions of the testator. That these interviews were had in pursuance of and under the sanction of a professional employment, and that communications made by a client under such circumstances to his attorneys, were clearly within the protection of the statute, we have no doubt. (*Westover* v. *Ætna Ins. Co.*, *supra*; *Renihan* v. *Dennin*, *supra*; Code of Civil Pro. § 835.)

The prohibition of the statute, therefore, applies to these communications, and they were inadmissible as evidence unless brought within the provisions of section 836, authorizing their disclosure. By that section the pledge of secrecy imposed by the statute is to be observed, unless its provisions "are expressly waived" by the client. There is nothing in this section requiring the waiver to be made in writing, or in any particular form or manner, or at any particular time or place; but it is required to be an express waiver, and made in such manner as to show that the testator intended to exempt the witnesses, in the particular instance, from the prohibition

imposed by the statute. An examination of the will itself, as well as the evidence of all of the witnesses present on the occasion of its execution, concur in establishing the fact that the testator requested both Hughes and Northrup to sign the attestation clause of his first as well as of his second will, as witnesses thereto. That request implies not only information as to the necessity of such signatures to the validity of the instrument executed, but also knowledge of the obligations which they assumed in respect to the proof thereof after his death. He must have been aware that his object in making a will might prove to be ineffectual unless these witnesses could be called to testify to the circumstances attending its execution, including the condition of his mental faculties at that time.

The condition of the testator's mind, as evidenced by his actions, conduct and conversation at the time of making a will, is a part of the *res gestæ* of the transaction, and witnesses thereto are competent to speak thereof, and give opinions in relation thereto, without any other knowledge thereof except that derived from his conduct on such occasions. (*Clapp* v. *Fullerton*, 34 N. Y. 190; *Holcomb* v. *Holcomb*, 95 id. 316.)

The law presumes knowledge on his part of its provisions, and that what he does deliberately is done with a full comprehension of the legal effect of his act, and the duty which it imposes upon those who comply with his request. It would be contrary to settled rules of law to ascribe to the testator an intention, while making his will and going through the forms required to make it a valid instrument, to leave in operation the provisions of a statute which he had power to waive, but which, if not waived, might frustrate and defeat the whole object of his action. It cannot be doubted that, if a client in his lifetime should call his attorney as a witness in a legal proceeding, to testify to transactions taking place between himself and his attorney, while occupying the relation of attorney and client, such an act would be held to constitute an express waiver of the seal of secrecy imposed by the statute, and can

it be any less so when the client has left written and oral evidence of his desire that his attorney should testify to facts, learned through their professional relations, upon a judicial proceeding to take place after his death? We think not. (*McKinney* v. *G. St., etc., R. R. Co.*, 104 N. Y. 352.) The act of the testator, in requesting his attorneys to become witnesses to his will, leaves no doubt as to his intention thereby to exempt them from the operation of the statute, and leave them free to perform the duties of the office assigned them, unrestrained by any objection which he had power to remove.

We have carefully examined other points made by the appellant upon the argument and in the printed brief submitted to the court, but find no material error committed by the trial court, which entitles the appellant to a reversal of the judgment.

The judgment should, therefore, be affirmed, with costs.

All concur.

Judgment affirmed.