SCHATTMAN et al. v. AMERICAN CREDIT INDEMNITY CO.

(Supreme Court, Appellate Division, First Department.   November 11, 1898.)

1. CROSS-EXAMINATION—READING ARTICLE FROM NEWSPAPER.
   It is improper to allow a party to cross-examine a witness by reading to him a newspaper article, which does not purport to be a statement of the witness, and ask him if statements in such article are true, where the article does not directly relate to any evidence given by the witness on direct examination, and is largely made up of facts which are not within the knowledge of the witness, and which relate to the acts and declarations of others.

2. REDIRECT EXAMINATION—CORROBORATING EVIDENCE—MATERIALITY.
   An apparently friendly witness, who had been the attorney for the adverse party, called to prove the execution and delivery of a certain instrument by the adverse party, after testifying to such acts, and to the contents of the instrument, which had been lost, was, on his redirect examination, read a statement in a newspaper article purporting to have been made by him, and he was asked whether he had seen it in print on the day the paper was published, and whether he had had interviews with reporters the day previous to its publication, and had made statements to them in regard to the facts.   The newspaper account corresponded with the witness' statement on the stand in regard to the contents of the lost instrument.   Held, that the questions were immaterial and incompetent.

3. SAME.
   The court refused to instruct that the newspaper article in itself was no evidence of the facts stated in it, but intimated that the jury might consider the statement made in the newspaper article by said witness. Held reversible error, since the effect of the ruling was to allow the jury to consider, in corroboration of the witness' statement on the stand, a statement made long before, when he was acting under a retainer from plaintiffs.

4. CONFIDENTIAL COMMUNICATIONS—ATTORNEY AND CLIENT.
   Evidence by an attorney of the independent fact of the execution of an instrument by his client, or of its delivery, or of its contents, where the knowledge of the contents had been acquired by the attorney in some other way than from a communication from the client, is not a confidential communication, within Code Civ. Proc. § 835, providing that an attorney shall not be allowed to disclose a communication made by his client to him, or his advice given thereon, in the course of his professional employment.

Appeal from trial term, New York county.

Action by Jacob Schattman and others against the American Credit Indemnity Company.   From a judgment entered on a verdict for defendant, plaintiffs appeal.   Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Franklin Pierce, for appellants.
Otto Horwitz, for respondent.

INGRAHAM, J. The action is brought to recover upon what is called a "bond of indemnity" issued by the defendant, whereby the defendant agrees to indemnify the plaintiffs against "loss to the extent of, and not exceeding, ten thousand dollars, resulting from insolvency of plaintiffs' debtors over and above an annual net loss of three thousand dollars." The particular loss for which the plaintiffs claim indemnity was caused by the insolvency of one Bach, by which it is claimed that the plaintiffs sustained a loss of upwards of $15,000. The defense was that the plaintiffs had received from said Bach a large sum of money or other property in full settlement or on account of such indebtedness, and had executed and delivered to said Bach a general release from all liability to the plaintiffs on account thereof. On cross-examination of one of the plaintiffs, counsel for the defendant asked the following question: "Let me read you an article that was published in the New York Times of July 25th, and ask you if it is a correct statement of the failure of Mr. Bach." This was objected to by counsel for the plaintiffs as "hearsay, immaterial, and incompetent." In answer to that objection, the court said, "He can testify whether it is a correct statement of the failure." Counsel for the plaintiffs stated: "I think reading the New York papers is not. He may let him read it;" to which the court replied: "The paper is not offered in evidence. I will receive it;" to which counsel for the plaintiffs excepted. Counsel for the defendant then read to the witness a statement from a daily newspaper of the date of July 25, 1893, which contained a statement of Bach's financial embarrassment, the obtaining of a judgment against him, a report of the amount of his liabilities, among which were mentioned the plaintiffs' claims, with a statement of a person who was acting as an attorney for the plaintiffs that a large part of the plaintiffs' claim was secured by an assignment of outstanding accounts, "and for the balance they took a bill of sale on merchandise in the store, giving Mr. Bach $2,000 and a release of their claim," with a further statement as to the financial condition of Bach and his method of conducting his business. The witness was then asked, "Is that statement substantially a correct statement of the fact?" That was objected to by counsel for the plaintiffs as calling for the conclusion of the witness, as an attempt to introduce a newspaper in evidence, and as too indefinite and general, and being generally incompetent and immaterial. To that the court replied, "I will receive it," and counsel for the plaintiffs excepted. Several other questions were asked concerning this statement, to which counsel for the plaintiffs objected, and, upon the objections being overruled, excepted. The witness, in reply to these questions, while stating that he was unable to say whether it was correct, said that he could not point out any part of it that was incorrect; that he did not know anything about Bach's inside business. Subsequently Herman Joseph, an attorney who had acted for the plaintiffs in relation to their settlement with Bach, was called as a witness by the defendant. The defendant again produced this article from the newspaper, and asked the following question: "In the course of the article you are quoted as follows: [Repeating a part of the article which purported to be a statement by said Joseph to a newspaper reporter.] Do you re-

member seeing that in the public print on July 25, 1893?" That was objected to by plaintiffs' counsel as "immaterial and incompetent, and what appears in a newspaper has no bearing, and hearsay and declarations made by the witness at that time are immaterial and incompetent." That objection was overruled, and the plaintiffs excepted, and the witness answered, "I believe I did." The witness was then asked if he had interviews with various reporters, or if he had received calls from various reporters, on July 24th. This was also objected to as "immaterial and incompetent, and the contents of what he said to reporters is hearsay." This objection was also overruled, to which counsel for the plaintiffs excepted, and the witness answered, "My best impression is that they did." He was then asked if he had made to these various reporters some statements in connection with the Bach case, to which the same objection was taken, followed by the same ruling and an exception. The witness answered that he had had such interviews. Counsel for the plaintiffs then moved that the question which counsel had read to the witness, and the answer, be stricken out. This motion was denied, to which plaintiffs' counsel excepted.

We think that this method of examining a witness was entirely improper. The effect was to get before the jury the contents of a newspaper article, and under the guise of a cross-examination to obtain from a witness a statement of his inability to deny the truth of that article, when it was apparent that most of the facts stated in the article were not within the knowledge of the witness, and could not, therefore, be either denied or admitted. Counsel, on cross-examination, could have asked the witness whether certain facts were or were not true, but it was entirely irregular and improper to read what purported to be a newspaper article, and which did not, in fact, purport to be a declaration of the witness, and ask him whether that article was true. The direct examination of the witness had not been directed to any of the facts contained in this newspaper article. He had not testified on his direct examination as to this settlement with his debtor, or as to the facts commented upon in this newspaper article. The question that was involved in reading this statement in the newspaper was not strictly a cross-examination as to any evidence given by the witness upon his direct examination; and such a method of getting a newspaper article before the jury is entirely irregular, and not to be encouraged. While we recognize that the extent and method of cross-examination is largely discretionary with the trial court, and an appellate court is not justified in interfering except where there is a plain abuse of such discretion, we think that it is entirely improper to allow, upon cross-examination, reading to a witness, in the presence of the jury, a newspaper article which does not purport to be a statement of the witness, which does not directly relate to any testimony given by the witness upon direct examination, and which is largely made up of facts which are not within the knowledge of the witness, and which relate to the acts and declarations of others. But, whatever may be said of the correctness of such cross-examination, the repetition of this method in conducting the direct

examination of the witness Joseph, who was called by the defend-
ant, was clearly incompetent and improper.    Joseph was called as
a witness to prove the execution and delivery of a general release
from the plaintiffs to Bach.    He testified that he had prepared the
release as attorney for the plaintiffs, was present at the time of its
execution, and witnessed its delivery to Bach.    He does not appear
to have been an adverse witness, his only objection to answering ap-
pearing to have been a proper care on his part to avoid making any
disclosure of any confidential relation between himself and his
client, with a desire to obtain a direction from the court as to his
duty in answering the questions asked him.    On his direct exami-
nation he had testified that the plaintiffs had delivered to Bach a
general release at the time of the transfer by Bach to the plain-
tiffs of certain property, and after cross-examination, during which
the statement of the witness that a release had been delivered was
not questioned, counsel for the defendant again read to the wit-
ness from the article in the newspaper, and asked him whether he
remembered seeing that in the public print on July 25th.    Then
followed questions as to whether the witness had interviews with
reporters on July 24th, and whether he made statements to these
reporters in regard to this case.    These questions were entirely
immaterial and incompetent.    The witness was called by the de-
fendant.    It was entirely immaterial upon any question presented
in the case as to whether or not the witness had made statements to
others which corroborated his statement under oath in court, and it
was entirely immaterial whether he had talked to reporters upon
the subject.    The result of such a course of examination was to get
before the jury the fact that the defendant's own witness had made
a statement prior to the trial which corroborated his statement upon
the stand, and when he was acting under a professional retainer
from the plaintiffs.    It gave to the newspaper article a certain credit
in the eyes of the jury which would be likely to affect their verdict,
and which was incompetent.    The effect of this was emphasized by
the action of the court upon the requests of counsel for the plain-
tiffs to charge in regard to this newspaper article.    After the charge,
counsel for the plaintiffs asked the court to instruct the jury that
they should disregard entirely the article read from the newspaper
of July 25, 1893, by the defendant's counsel, and especially that they
should disregard any statement made as to the statements made
by Herman Joseph, the witness called by the defendant.    To that
the court replied, "Do you mean any statement made by him while
on the stand as a witness?" to which counsel for the plaintiffs re-
plied, "No; any statements made in the article."    To that the court
replied, "I decline to strike out the question."    Counsel for the
plaintiffs then stated:    "Your honor refuses to instruct the jury to
disregard the portion of it that was read to them in the question by
counsel?" to which the court replied:    "Any part of it that was not
embodied in the questions put to the witness the jury must disre-
gard, but what was read in the form of questions to the witness,
that the jury need not disregard."    Counsel for the plaintiffs then
said:    "I ask your honor to state to the jury that there is no evi-

dence before the jury that any statement contained in the article to them read by the counsel in the form of a question is true." To that the court replied: "That I decline to do. The jury must determine that question from the testimony of Mr. Joseph, and you have heard what he said in reference to the release. You may also take that into consideration with the other evidence in the case, and determine whether it is true or not. It is for you to say." To that counsel excepted, and the court then stated to the jury: "I have already said that the article is not to be taken into consideration; only that part of it which was read by way of putting the questions to the witness. That is all that need be taken into consideration." To that counsel for the plaintiffs excepted. Here was an intimation to the jury that they could consider the article in the newspaper that was included in the question read to the witness, and a refusal to instruct the jury that the newspaper article in itself was no evidence of the facts stated in it. For this error we are constrained to order a new trial.

There are several other questions, which it is not necessary for us to determine upon this appeal, as they may not be presented upon a new trial. The principal one was the competency of the testimony of Joseph as to the delivery of this general release, the objection to such testimony being that it involved the disclosure of a confidential communication between a client and his attorney. It is well for us to state, however, that, so far as the attorney was called upon simply to prove the execution and delivery of an instrument by the plaintiffs, or the contents of that instrument, knowledge of which he had procured by reading it, and which was not acquired by any communication from the client to the attorney, was not within the privilege provided for by section 835 of the Code. By that section it is provided that "an attorney or counselor at law shall not be allowed to disclose a communication made by his client to him, or his advice given thereon, in the course of his professional employment." This privilege would clearly exclude the attorney from disclosing any communication received by him from his client, or any knowledge that he acquired from his client while the relation between them continued. The fact, however, of the existence of an instrument in writing executed by the client, and the fact that such an instrument was actually delivered by the client to a third party, is not a communication made by the client to the attorney. It is an independent fact, witnessed by the attorney, and to which the attorney can testify without disclosing any communication made by the client to the attorney. So as to the contents of the instrument executed by the client and delivered to a third party. The transaction is completed by the execution and delivery of the instrument. It then becomes the agreement between the parties, and the knowledge that an attorney has of that instrument is not a fact communicated to him by his client, but arises from his independent knowledge of the instrument acquired by the use of his own senses. Assuming that this release, when executed and delivered, had remained in the possession of the attorney, acting for both parties, it cannot be doubted but that the court would be bound to require an

attorney to produce such an instrument which had been executed and delivered in any litigation in which that instrument became material. The production of such an instrument would not violate this privilege, as the instrument would speak for itself; and the production of the paper would prove the agreement between the parties. The mere production of the agreement would not require the attorney to disclose any communication made to him by his client; and so, when the instrument is lost, or its production cannot be compelled, so that secondary evidence of its contents is admissible, the knowledge that an attorney has as to the contents of such an intrument acquired by the examination of an instrument would not be knowledge acquired by a communication from the client to the attorney any more that the production of the instrument itself would be the result of such a communication. Any statement or communication by the client to the attorney, or any advice given by the attorney, as to the construction, meaning, or effect of the instrument, would be incompetent; but a mere statement of the fact that a paper writing was executed and delivered in the presence of the attorney, and the statement of the contents of that instrument, which was acquired by the attorney by reading, would not involve a communication from the client to his attorney. Thus, the independent fact of the execution of the written instrument, its delivery by one party to the other, or the contents of the instrument, where the knowledge of the contents had been acquired by the attorney in some other way than through a communication from his client, would not be within the provisions of the statute.

There is another question presented, and that is whether a sufficient foundation had been laid for the introduction of secondary evidence of the contents of that instrument. It is not necessary to determine that question, as any defect in the proof as to the inability to obtain possession of that instrument may be obviated upon another trial. But for the error before pointed out in relation to this newspaper article upon the trial, a new trial must be ordered.

The judgment is reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.