In the Matter of the Probate of the Will of JOHN CUNNION, Deceased.

CATHERINE McHUGH, Appellant; NELLIE CUNNION, Respondent.

Will — presumption that will, executed prior to one offered for probate, has been destroyed by testator, animo revocandi — attorney who drafted earlier will not permitted to testify as to contents thereof unless the provisions of section 835 of the Code of Civil Procedure have been expressly waived in accordance with section 836.

If a will, shown once to have existed and to have been in the testator's possession, cannot be found after his death, the presumption is that he destroyed it, *animo revocandi*, but this presumption may be rebutted by evidence.

A later will is not necessarily a revocation of a prior will, unless by it the prior will is in terms revoked and canceled, or by the later will a disposition is made of all of the testator's property, or the same is so inconsistent with the former will that the two cannot stand together, or that the former will is revoked *pro tanto*.

At common law, and until otherwise expressly enacted, an attorney who had drafted a will was at liberty after the testator's death to disclose all that affected its tenor and execution. But section 835 of the Code of Civil Procedure prohibits an attorney from disclosing a communication from a client in the course of his professional employment, except when expressly waived in open court on the trial of an action or by stipulation of attorneys, as provided by section 836, and a waiver must be made, in accordance with the terms of that section, otherwise it cannot be considered by the courts. This prohibition, however, does not extend to a case where the attorney is a subscribing witness to the will.

An attorney who drafted a will which is not produced upon the hearing is not competent to testify to its contents upon a contest over the probate of a will of earlier date, because of this prohibition.

The provisions of sections 835 and 836 of the Code of Civil Procedure, and amendments thereto, considered and construed.

*Matter of Cunnion*, 135 App. Div. 864, affirmed.

(Argued January 5, 1911; decided February 28, 1911.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 30, 1909, which affirmed a decree of the Kings

County Surrogate's Court admitting to probate the will of John Cunnion, deceased.

John Cunnion, on September 9, 1907, executed a will. On June 6, 1908, he executed another will. He died on the 16th day of August, 1908. After his death the will of September 9, 1907, was found, but the will of June 6, 1908, could not be found. This proceeding was commenced by a legatee under the will of September 9, 1907, to have the same probated. The probate was contested by a daughter of the testator, and it appeared that the will of September 9, 1907, was duly signed and executed and that the will of June 6, 1908, was also duly signed and executed, but the contestant was unable to prove the contents of the will of June 6, 1908. Both of the wills were drawn by Francis L. Maher, the attorney of John Cunnion, and he was present when each of them was executed. When the will of June 6, 1908, was executed it was signed in the presence of the subscribing witnesses and Maher read to such witnesses in the presence of the testator an attestation clause in the usual form and such attestation clause which followed the signature of the testator was then signed by the witnesses in the presence of the testator. The subscribing witnesses did not know the contents of the will. Maher as a witness in this proceeding was asked : " Q. I ask you to state the contents, all that you can remember." The attorney for the proponent then objected to the witness answering the question on the grounds that it is not " the best evidence of the contents of a written paper ; the paper should be produced ; and also, as privileged under section 835 of the Code." The decision of the surrogate was reserved. Thereafter a stenographer, employed by Maher, testified that about May 16, 1908, pursuant to a conversation with Maher, she copied a paper given to her by him and returned such paper and a copy of it made by her to Mr. Maher. The original paper from which the copy was made was produced in court, and the contestant then sought to show that the copy made from it was the will duly executed on June 6, 1908, by the testator and the paper so produced was offered in evidence. It was objected to "As

irrelevant; it is not shown to be a copy of any will, and is not shown to be a copy of any instrument executed by Mr. Cunnion; if the stenographer attempted to testify that it was a copy of Mr. Cunnion's will she would be barred from testifying under the same rule that would apply to Mr. Maher's testimony." The surrogate then ruled as follows: "I think that it will be in violation of section 835 of the Code," and the objection was sustained and an exception taken.

The will of September 9, 1907, was admitted to probate and an appeal was taken therefrom to the Appellate Division, where the decree of the surrogate was unanimously affirmed. This appeal is taken from the judgment of affirmance.

*John J. Curtin* and *Edward S. Keogh* for appellant. It was error to exclude the evidence of Mr. Maher as to the contents of the will of June 6, 1908. (4 Wigmore on Ev. 3242; *Doherty* v. *O'Callaghan*, 157 Mass. 90; *Blackburn* v. *Crawford*, 3 Wall. 175; *Rosseau* v. *Bleau*, 131 N. Y. 177; *Sheridan* v. *Houghton*, 16 Hun, 628; *Schattman* v. *A. C. I. Co.*, 34 App. Div. 392; *Pierson* v. *People*, 79 N. Y. 424; *Matter of Austin*, 42 Hun, 516; *Fayerweather* v. *Ritch*, 90 Fed. Rep. 13; *Hurlburt* v. *Hurlburt*, 128 N. Y. 424; *King* v. *Ashley*, 179 N. Y. 284; *Loder* v. *Whelpley*, 111 N. Y. 239.) The waiver required to be made on the trial under section 836 of the Code of Civil Procedure has no application to the case at bar. (*Matter of Barnes*, 70 App. Div. 527; *Fayerweather* v. *Ritch*, 90 Fed. Rep. 13; *People* v. *Brecht*, 120 App. Div. 773; *Doheny* v. *Lacy*, 168 N. Y. 224; *Rosseau* v. *Bleau*, 131 N. Y. 183; *Matter of Coleman*, 111 N. Y. 220.) It was error not to receive in evidence the paper marked for identification as a copy of the will of John Cunnion, executed June 6, 1908. (*Schattman* v. *A. C. I. Co.*, 34 App. Div. 39; *Jones* v. *Reilly*, 174 N. Y. 105; *Avery* v. *Lee*, 117 App. Div. 244; *Bankers' Assn.* v. *Nachod*, 120 App. Div. 732; *Matter of Chapman*, 27 Hun, 573; *Coveney* v. *Tannehill*, 1 Hill, 38; *Hebbard* v. *Haughian*, 70 N. Y. 54; *King* v. *Ashley*, 179 N. Y. 281; *Mitchell's Case*, 12 Abb. Pr. 249.)

*M. F. McGoldrick* for respondent. The testimony sought to be given by Mr. Maher was properly excluded. (Code Civ. Pro. § 835; *People* v. *Buchanan,* 145 N. Y. 1; *Doheny* v. *Lacy,* 168 N. Y. 213; *Matter of Coleman,* 111 N. Y. 220; *Loder* v. *Whelpley,* 111 N. Y. 239; *Matter of Sears,* 33 Misc. Rep. 141; *Gick* v. *Stumpf,* 126 App. Div. 548.)

CHASE, J. There was no effort in this proceeding to prove the will of June 6, 1908, as a lost will. It is not even claimed before us that the will was inadvertently lost or mislaid, but the contestant seeks to show the contents of that will that she may claim therefrom an express revocation of all former wills or provisions so antagonistic and inconsistent with the former will as to amount to a revocation.

If a will, shown once to have existed and to have been in the testator's possession, cannot be found after his death, the presumption is that he destroyed it, *animo revocandi,* but this presumption may be rebutted by evidence. (Jarman on Wills [6th ed.], 171; Jessup's Surrogate's Practice, 359; Greenleaf on Evidence, vol. 2, § 688; *Matter of Kennedy* 167 N. Y. 163; *Collyer* v. *Collyer,* 110 N. Y. 481.)

There was evidence received in this proceeding from which it is urged that it should be inferred that the testator destroyed the will of June 6, 1908, because he was dissatisfied with its provisions. A later will is not necessarily a revocation of a prior will, unless by it the prior will is in terms revoked and canceled, or by the later will a disposition is made of all of the testator's property, or the same is so inconsistent with the former will that the two cannot stand together, or that the former will is revoked *pro tanto.*

More than one will may exist at the same time, and they may be construed together if such was the intention of the testator, and the contents of the later will may be shown to determine the testator's intention. (Jarman on Wills [6th ed.], 171.)

The contents of the will of June 6, 1908, were not shown, and the surrogate was right upon the evidence before him in

admitting the will of September 9, 1907, to probate. The only question now remaining for our consideration is whether the surrogate erred in refusing to allow the testimony of Maher as to the contents of the will of June 6, 1908, because of the prohibition contained in section 835 of the Code of Civil Procedure.

Professor Wigmore in his work on Evidence gives an extended statement of the rules relating to privileged communications. He states the rule of the common law excluding communications between attorney and client when legal advice of any kind is sought and given, and in connection therewith discusses the history and policy of such rule, and in referring to wills and testamentary dispositions he says: "But for wills a special consideration comes into play. Here it can hardly be doubted that the execution and especially the contents are impliedly desired by the client to be kept secret during his lifetime, and are accordingly a part of his confidential communication. It must be assumed that during that period the attorney ought not to be called upon to disclose even the fact of a will's execution, much less its tenor. But, on the other hand, this confidence is intended to be temporary only. That there may be such a qualification to the privilege is plain. That it appropriately explains the client's relation with an attorney drafting a will seems almost equally clear. It follows, therefore, that after the testator's death the attorney is at liberty to disclose all that affects the execution and tenor of the will. The only question could be as to communications tending to show the invalidity of the will, *i. e.*, from which a circumstantial inference could be drawn that the testator was insane or was unduly influenced. * * * As to the tenor and execution of the will, it seems hardly open to dispute that they are the very facts which the testator expected and intended to be disclosed after his death; and, with this general intention covering the whole transaction, it is impossible to select a circumstance here or there (such as the absence of one witness in another room) and argue that the testator would have wanted it kept secret if he had known

that it would tend to defeat his intended act." (Wigmore on Evidence, vol. 4, sec. 2314.)

The reasoning is quite satisfactory, and the rule as stated relating to testamentary dispositions has been substantially adopted in many states as the common-law rule. (*Doherty* v. *O'Callaghan*, 157 Mass. 90; *Graham* v. *O'Fallon*, 4 Mo. Rep. 338; *Scott* v. *Harris*, 113 Ill. 447; *Coates* v. *Semper*, 82 Minn. 460; *Inlow* v. *Hughes*, 38 Ind. App. 375; *Matter of Layman's Will*, 40 Minn. 372; *Michell* v. *Low*, 213 Pa. St. 526; *Goddard* v. *Gardner*, 28 Conn. 172; *Matter of Shapter*, 35 Col. 578; *Matter of Downing*, 118 Wis. 581; *Winters* v. *Winters*, 102 Iowa, 53. See *Russell* v. *Jackson*, 9 Hare, 387; *Blackburn* v. *Crawfords*, 70 U. S. 175; *Glover* v. *Patten*, 165 U. S. 394; *Stewart* v. *Walker*, 6 Ont. L. 495.)

In reading the decisions of the courts of this state it is necessary to remember that prior to September 1, 1877, the common law relating to disclosures of communications and transactions between attorneys and clients prevailed in this state, but from and after that date we have had not only a statute (section 835, Code of Remedial Justice, now Code of Civil Procedure) relating to such disclosures, but also a statute (section 836 of said Code) defining when the statute relating to such disclosures shall apply. The later statute has been frequently amended so as to extend from time to time the application of the prohibition and to make more clear when and how its provisions can be expressly waived.

We are not without authority in this state in accordance with the rule stated by Wigmore, but the decisions constituting such authority were made in cases where the evidence was offered before the enactment of said sections 835 and 836, or at least before the more recent amendments to said section 836. (*Sheridan* v. *Houghton*, 16 Hun, 628; affd., 84 N. Y. 643; *Sanford* v. *Sanford*, 61 Barb. 293; *Matter of Chase*, 41 Hun, 203; *Matter of Austin*, 42 Hun, 516; *Hebbard* v. *Haughian*, 70 N. Y. 54.)

It may be assumed that when said section 835 was first enacted it was the intention of the legislature to codify the

rule of the common law and not to extend it. (*Matter of Austin*, 42 Hun, 516; *Hurlburt* v. *Hurlburt*, 128 N. Y. 420.) Subsequently, however, the amendments to section 836 clearly show an intention on the part of the legislature to extend the prohibitions beyond the rule of the common law and to so define the time and manner of expressly waiving the prohibitions as to make the same much more difficult than it was as it existed under the authorities defining said rules of the common law.

It is provided by said section 835 as follows: " An attorney or counselor at law shall not be allowed to disclose a communication, made by his client to him, or his advice given thereon, in the course of his professional employment, nor shall any clerk, stenographer or other person employed by such attorney or counselor be allowed to disclose any such communication or advice given thereon."

That section was first amended to read as stated by chapter 564 of the Laws of 1896. Prior to that time it did not contain that part relating to a clerk, stenographer or other person employed by such attorney or counselor.

Included in said Code are sections 833 and 834 referring to confessions to a clergyman or other minister of any religion and to information acquired by a physician or surgeon respectively. Section 836 as then enacted read as follows: " The last three sections apply to every examination of a person as a witness unless the *person confessing, the patient or the client as the case requires, is present or represented by counsel and does not object to the testimony.*"

It was said in the notes accompanying the publication of the Code as first enacted that section 836 was intended to prevent testimony of confidential communications being given in case of defaults and *ex parte* proceedings. An amendment was soon passed to that section which took effect four months after the original section became enforceable which omitted the words underscored and in place thereof inserted the following words: " provisions thereof are expressly waived by the person confessing, the patient, or the client."

9

By chapter 381 of the Laws of 1891, to take effect September 1, 1891, the section was again changed by inserting the word "any" in the first line in place of the word "every" and by inserting between the words "waived" and "by the person" the words "upon the trial or examination."

By the same act there was added to the section the provision in regard to a physician or surgeon, but it did not then include "or a professional or registered nurse," or the words "or the surviving husband, widow or any heir at law or any of the next of kin of such deceased or any other party in interest."

By chapter 514 of the Laws of 1892, passed May 12, 1892, to take effect immediately, there was added to the section the words allowing the surviving husband and others named in certain cases to expressly waive on the trial or examination, the prohibition against the testimony of a physician or surgeon, and there was also added thereto the clause relating to an attorney as follows: " But nothing herein contained shall be construed to disqualify an attorney on the probate of a will heretofore executed or offered for probate or hereafter to be executed or offered for probate, from becoming a witness as to its preparation and execution in case such attorney is one of the subscribing witnesses thereto."

In 1899 by chapter 53 there was added to the section the words: " The waivers herein provided for must be made in open court, on the trial of the action, or proceeding, and a paper executed by a party prior to the trial, providing for such waiver shall be insufficient as such a waiver. But the attorneys for the respective parties, may prior to the trial, stipulate for such waiver, and the same shall be sufficient therefor." Other amendments not important on this appeal were passed in 1893 and 1904. It is still open to the courts when not otherwise provided to determine what is a communication made by a client to an attorney or counselor or advice given by such attorney or counselor in the course of his professional employment, but when it is determined that certain testimony is within the provisions of the statute its

application to an examination of a person as a witness is stated in section 836 and a waiver must be made in accordance with the terms of that section, otherwise it cannot be considered by the courts.

It has been held that the prohibition under the common-law rule and also as defined by statute, does not apply to a case where two or more persons consult an attorney for their mutual benefit in any litigation which may thereafter arise between them, but that it does apply in a litigation between them and strangers. (*Hurlburt* v. *Hurlburt*, 128 N. Y. 420.)

It does not apply where two or more persons are present cognizant of the attorney's professional work. (*Doheny* v. *Lacy*, 168 N. Y. 213.) There are many cases where an attorney can testify to facts not in the nature of advice given or communications made to him for the purpose of obtaining advice such as the delivery of a deed made by an attorney at the request of his client. (*Rosseau* v. *Bleau*, 131 N. Y. 177.)

An attorney's knowledge of the contents of an instrument not acquired through any communication by the client or advice given by him is not confidential. (*Schattman* v. *Am. Credit Ind. Co.*, 34 App. Div. 392.)

An attorney can be compelled to produce papers in his possession when his client could have been compelled to produce them if in such client's possession. (*Jones* v. *Reilly*, 174 N. Y. 97.)

Prior to the amendment of section 836 in 1892 relating to an attorney this court in *Loder* v. *Whelpley* (111 N. Y. 239, 248) said: "A lawyer, in receiving the directions or instructions of one intending to make a will, is confided in by reason of his professional character as a counselor, and he acts in that capacity, although asking no questions and without advising, he does nothing more than to reduce those directions to writing." And it was held that the relation between the testatrix whose will was under consideration in that case and the witness, who was her attorney, was that of client and attorney.

Again, this court in *Matter of Coleman* (111 N. Y. 220, 226), referring to the evidence of witnesses who were employed

by the testator in their professional capacity to draw a will for him, and to conversations had with them for the purpose of enabling them to execute the instructions of the testator, said : " That these interviews were had in pursuance of and under the sanction of a professional employment, and that communications made by a client under such circumstances to his attorneys were clearly within the protection of the statute, we have no doubt."

It was there also held that " The act of the testator, in requesting his attorneys to become witnesses to his will, leaves no doubt as to his intention thereby to exempt them from the operation of the statute, and leave them free to perform the duties of the office assigned them, unrestrained by any objection which he had power to remove." (p. 228.)

This court has never modified or changed the letter or spirit of the two last decisions from which we have quoted. A short time after such decisions were reported the amendment to said section 836 in 1892 was passed, which we again quote : " But nothing herein contained shall be construed to disqualify an attorney in the probate of a will heretofore executed or offered for probate or hereafter to be executed or offered for probate from becoming a witness, as to its preparation and execution in case such attorney is one of the subscribing witnesses thereto."

It cannot reasonably be doubted that this amendment to section 836 was passed to conform to the decisions from which we have quoted and to make it clear beyond controversy that when an attorney or counselor becomes a subscribing witness to a will the prohibition of section 835 does not apply to him, and that in case he does not become a subscribing witness to a will the provisions of section 835 are applicable, and that the common-law rule as stated by Wigmore relating to testamentary dispositions is overcome and made of no effect by our statutes.

Even before the amendment to section 836, made in 1892, it was said in *Mason* v. *Williams* (53 Hun, 398), referring to sections 834 and 835 : " It is difficult to see, upon a reading of

the sections in question, how any such idea (that said section does not apply to testamentary dispositions) came to be entertained, because its language is positive and unequivocal, and makes no exceptions as to the class of cases to which they shall apply; and they must necessarily apply to testamentary cases as well as to any others, unless the plain provisions of the sections are to be repealed by judicial legislation. They require no construction, but are plain and explicit." (p. 400.) (See *Matter of Sears*, 33 Misc. Rep. 141.)

It was held in the Federal Circuit Court in *Fayerweather* v. *Ritch* (90 Fed. Rep. 13) that sections 835 and 836 of our Code do not prevent an attorney who drew the testator's will and a codicil thereto from giving testimony as to the contents of the codicil, and this decision is called to our attention by the appellants, but that decision was expressly overruled and reversed by the Circuit Court of Appeals, reported as *Butler* v. *Fayerweather* (91 Fed. Rep. 458), in which WALLACE, J., says: "In this state the common-law rules of evidence in respect to privileged communications have been materially changed by Code Civ. Proc. §§ 835, 836. Whether these changes were inconsiderate and due to hasty and superficial legislation, or whether they were made with a deliberate purpose to seal the lips of witnesses in cases where the courts had refused to do so, it is unnecessary to inquire. The statute must be given the effect which its language requires. Originally the Code merely provided that an attorney or counselor at law should not be allowed to disclose a communication made by his client to him, or his advice given thereon, in the course of his professional employment, unless that provision should be 'expressly waived' by the client. The statute came before the Court of Appeals of New York for construction in two cases decided in 1888. (*In re Coleman*, 111 N. Y. 220, and *Loder* v. *Whelpley*, 111 N. Y. 239.) In both of these cases it was held that the prohibition of the Code precluded the disclosure of instructions given by a testator to an attorney employed to draw his will; but in *Coleman's Case* it was held that, where the attorney became

the attesting witness to the will at the request of the testator, the prohibition was 'expressly waived' within the meaning of the Code and the attorney was competent to testify as to all the circumstances attending the execution of the instrument. Thereafter the Code was amended so that the prohibition should apply unless 'expressly waived upon the trial' by the client, but should not disqualify an attorney 'in the probate of a will' from becoming a witness as to its preparation and execution if one of the subscribing witnesses thereto. As the statute now reads, no act of the client, except a waiver upon the trial, can be treated as a waiver of the prohibition of disclosure; and, except he is an attesting witness to a will, in no case is an attorney permitted to make disclosure in respect to the contents of any documents or other information communicated to him in the course of his professional employment by his client."

If it is the intention of the legislature that section 835 shall not apply to testimony relating to testamentary dispositions after the death of the testator it should be so stated in an amendment to such section or to section 836.

The testimony of Maher was properly rejected and the judgment should be affirmed, with costs.

CULLEN, Ch. J., WERNER, WILLARD BARTLETT and HISCOCK, JJ., concur; VANN and COLLIN, JJ., dissent.

Judgment affirmed.