In the Matter of the Probate of the Alleged Last Will and Testament of WILLIAM L. PALMER, Deceased.

Surrogate's Court, Madison County, December, 1923.

**Wills — contested probate — proof essential to show that prior will was revoked by subsequent lost will — when testimony of single witness to lost will deemed unsatisfactory.**

It cannot be held as matter of law that a will revoking a former will may not be proved by the testimony of a single witness.

The testimony in such case should not only be carefully scrutinized, but it should conform to the probabilities and bear scrutiny in the light of the little earmarks, if any there be, which may tend to throw light upon the narrative, and the testimony should not be accepted unless it is most satisfactory.

The probate of a will, the due execution of which in 1908 was satisfactorily established and not disputed, was opposed on the ground that it was revoked by a will executed by the testator in 1913, and because that will has not been found the contestant claimed that the presumption arose that it was destroyed by the testator *animo revocandi* and that, therefore, he died intestate. The only proof of the making and execution of the will of 1913 was the testimony of a neighbor who had known the testator for a long time, and the only difference between both papers was that by the one offered for probate the testator's sister was given all of his estate except $200 while by the other paper she was given the whole estate. She predeceased the testator leaving a daughter, her only child or descendant, who is the proponent herein. The testator was never married, his nearest relatives at the time of his death being nephews and nieces

12

Upon dismissing the objections of the contestant and granting a decree admitting the will of 1908 to probate, *held*, that although the testimony of the witness concerning the execution of the alleged will of 1913 was neither directly nor circumstantially corroborated or directly contradicted in any point, it was not satisfactory, the surrounding circumstances tending to detract somewhat from the probabilities in favor of the witness who testified concerning a transaction alleged to have taken place in the presence of three persons all of whom were dead.

PROCEEDING to probate will.

*Cohn, Chorman & Franchot* (*Clarence R. Runnels*, of counsel), for proponent.

*Wm. L. Burke*, for contestants.

*M. J. White*, special guardian contesting for certain infants.

SENN, S. This is a proceeding for the probate of the alleged last will and testament of William L. Palmer, deceased. It is dated March 2, 1908, and its due execution has been satisfactorily established and is not disputed, but probate is opposed on the ground that it was revoked by a subsequent will executed by the testator in February, 1913. The alleged revoking will has not been found and it is claimed by the contestants that it was presumably destroyed by the testator *animo revocandi*, and that he, therefore, died intestate.

The only proof of the making and execution of the alleged subsequent will is found in the testimony of M. Gerald Smith, a neighbor, who testified that in the latter part of February, 1913, he and E. R. Fitch, another neighbor, were called to decedent's home for the purpose of being witnesses to his will. Witness had known testator for a long time. He had been away from home for about nine years, returning in the spring of 1912, and it was in the following February that Mrs. Eva Bacon, testator's sister, came to his home to care for him through an illness which lasted about six weeks and the will was executed while Mrs. Bacon was there. The witness and Mr. Fitch went into the house. Mr. Palmer sat in a chair by the stove with some papers in his hand. He handed a paper to witness, saying, " Here it is. Take it and read it. Eva said she thinks she ought to have it all;" that witness did read the paper and it was a last will and testament which provided for the payment of all his debts and then gave the entire estate to his sister, Eva Bacon, who was named as executrix; that the will was drawn on a printed form and toward the end were words to the effect that it revoked all former wills; that Mrs. Bacon got a pen and ink and deceased signed the will, after which it was signed by Mr. Smith and Mr. Fitch as witnesses. In short,

this witness testified to facts which, if true, would constitute a due execution of the revoking will. Mr. Fitch, claimed to be the other witness, died before Mr. Palmer's decease.

The only material difference between the will offered for probate and the alleged later one is that in the former Mrs. Bacon is given all of testator's estate except $200, while in the latter she was given the whole. Mrs. Bacon predeceased testator, leaving Annita M. Burhyte, a daughter, her only child or descendant, who is the proponent herein. If she is successful, she will, under section 29 of the Decedent Estate Law, take the entire estate of about $6,000. Otherwise it will be distributed among a considerable number of nieces, nephews and persons more distantly related, because the destruction of the second will would not revive the first. Dec. Est. Law, § 41.

Under section 34 of the Decedent Estate Law no will in writing " shall be revoked, or altered, otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by another person in his presence, by his direction and consent; and when so done by another person, the direction and consent of the testator and the fact of such injury or destruction shall be proved by at least two witnesses."

It will thus be seen that wills are not to be deemed revoked except upon very satisfactory proof. The purpose of the statute was to prevent fraud and perjury with reference to an act which becomes effective only after the death of the testator. *Lovell* v. *Quitman*, 88 N. Y. 377, 380, 381. It seems to me to be a legislative oversight that the statute which requires proof by two witnesses of the destruction of a will by another, leaves the door open to proof by one witness that a revoking will was executed, or that a will was destroyed by the testator himself. It leaves the door open to some of the same kind of abuse or fraud it was designed to prevent.

While it cannot be held, as matter of law, that a revoking will such as is claimed here cannot be proven by the testimony of a single witness (*Matter of Wear*, 131 App. Div. 875), I do feel that in such a case the testimony should be carefully scrutinized and not accepted unless it is most satisfactory. Among other things, it should conform to the probabilities and bear scrutiny in the light of the little ear marks, if any there be, which may tend to throw light upon the narrative.

In *Matter of Wear, supra,* it was held that a will which cannot be found and which revokes a former will, may be proven for the purposes of the revocation by the testimony of one witness and need not be proven by testimony of the character required to entitle a lost will to probate. But in that case both the will offered and the alleged revoking will were prepared by George Eckstein, testator's attorney, who was a subscribing witness to each. There seems to have been no question raised as to the fact of the execution of the later or revoking will, but it was claimed by contestants as matter of law that its proof must be of the character required in case of a lost will offered for probate. This contention was not sustained. Besides in that case the testator had sons and a daughter and it did no violence to the natural equities to let the property descend in the manner provided by law.

In the case at bar the testator was never married and had no children. His nearest relatives at the time of his decease were nephews and nieces. It does not appear from the evidence that he was under any obligation to any of them except his sister, Eva Bacon, who cared for him through an illness. It was natural and decent, at least, that he should desire to make her the object of his bounty.

The witness M. Gerald Smith is not corroborated in any point, either directly or circumstantially. He is not directly contradicted by any one, but it is a delicate matter to reject as void an instrument signed and published by a decedent as his will and to warrant such rejection on the ground claimed the proof must be clear and convincing. *Matter of Williams,* 34 Misc. Rep. 748, 749. All things considered, the testimony of this witness does not satisfy me.

The will offered for probate was prepared and witnessed by N. A. Crandall, who lived in an adjoining town, but not far distant from testator's residence. Mr. Crandall was able to recall all the material circumstances connected with the preparation and execution of the first will. Mr. Smith testified that at some time after its execution the deceased told him that the will of February, 1913, was prepared by the same Mr. Crandall who drafted the first will. Mr. Crandall had no recollection of any such will transaction, although he would not be positive that there was none. He was apparently not a lawyer and I believe that if he had drawn the alleged revoking will he would have remembered it. Besides, he would probably have been asked to be a witness. There may have been some good reason why he was not, but at any rate, that is not explained. My own observation from having attended the preparation and execution of many wills is that testators as a rule do not desire to have mere attesting witnesses know the

contents of their wills. There are exceptions, to be sure, and this may have been one of them, but I am impressed that if Mr. Smith's testimony is correct, Mr. Palmer was, for a recluse, quite communicative. Another straw. The testator's diary, or whatever the book may be called, was introduced in evidence. It recorded many seemingly trivial events in his life and some of more importance. Among other things it showed that his sister, Eva Bacon, came to his home on February 2, 1913, and returned to her home on March sixteenth. During the time of her stay at his home there are five entries, but no mention of a will. To offset this an older book or diary kept by deceased was offered. This covered the time of the will of March, 1908, and does not mention it. But in that book there is no entry from September 28, 1903, to March 1, 1909, except four entries in October, 1903, which appear out of their regular order in the book and after the entry of March 1, 1909. Besides, the will of March 2, 1908, was not executed at testator's home but while he was at the home of his brother-in-law, Mr. Bacon, in the adjoining town of Brookfield.

None of the circumstances to which I have alluded, nor all of them combined, would be considered by me as sufficient to reject the testimony of this witness, if he was in any way corroborated; but considering that the burden of proving revocation is on the contestant (*Matter of Dake*, 75 App. Div. 403), and that the witness is not corroborated even by the slight surrounding indications, but rather that they tend to detract somewhat from the probabilities in his favor, I do not feel warranted upon this testimony alone in denying probate to a will so just in its provisions and of whose due execution there is no possible doubt.

Counsel for contestants call my attention to the rule that the testimony of an unimpeached, uncontradicted witness cannot be disregarded arbitrarily or capriciously by a court or jury, and cite *Lomer* v. *Meeker*, 25 N. Y. 361, 363; but that was said in a case where the proposition differed widely from the one at bar. That was an action upon a promissory note. One of the defendants (who by the way did not defend) testified to the payment of usury to the plaintiff. The plaintiff did not take the stand to deny this nor was his failure to do so explained. The Court of Appeals held that under the circumstances it was error to deny defendant's motion for a nonsuit.

In the case at bar the witness Smith was testifying to a transaction alleged to have taken place in the presence of three persons, all of whom were deceased and, as the witness well knew, could by no possibility contradict him.

Surrogate's Court, Herkimer County, January, 1924.          [Vol. 122

The objections to the probate of the will offered are, therefore, dismissed and a decree to that effect and admitting said will to probate may be prepared.

Decreed accordingly. _____