In the Matter of the Estate of EDWARD ALBERT RIDLEY, Deceased.

Surrogate's Court, New York County, May 2, 1934.

*Burlingham, Veeder, Fearey, Clark & Hupper* [*Charles C. Burlingham* and *John L. Galey* of counsel], for Clara R. Gerken.

*Laughlin, Gerard, Bowers & Halpin* [*James W. Gerard, Robert P. Vickers* and *George A. Lewis* of counsel], for the Central Hanover Bank and Trust Company.

*Hannon & Evans* [*John W. Hannon* of counsel], for John Longley Ridley.

*Henry A. Uterhart* and *Alfred M. Schaffer* for Henry E. Ridley and others.

*Louis W. Stotesbury,* for Alberta Glore.

*Guggenheimer & Untermyer* [*Randolph H. Guggenheimer* and *William L. Cohn* of counsel], for Robert M. Ridley, Jr.

*John A. Byrnes,* special guardian for Robert M. Ridley, Jr.

*Furman & Appleton* [*Lewis J. Furman* of counsel], for Hazel Ridley Bergen and another.

*Johnstone & Richter* [*Robert S. Johnstone* of counsel], for Robert M. Ridley.

*Richard H. Arnold, Herbert C. Smyth, Alexander C. Dow* and *William C. Fleming,* for Jens Nelson, claimant.

FOLEY, S. This is a proceeding for probate. There arose a preliminary issue as to the status of Jens Nelson, who claimed to be a son of the decedent. He asserted that Edward Albert Ridley, the decedent, and Orline Nelson, the claimant's mother, were married in 1865. At that time the father of Ridley was a prominent drygoods merchant in New York city. The claimant maintained that by reason of parental opposition to the marriage, the decedent abandoned his wife, that she thereupon went west to the State of Michigan, where he was born in the year 1866. The mother is supposed to have died shortly after the birth of her son. He was taken into the family of his uncle, Gustaf Nelson, and brought up by him.

Edward A. Ridley was murdered on May 10, 1933, in his office in the sub-cellar of a house located on Allen street, New York city. The murderer is still undiscovered. Mr. Ridley left property valued at $3,000,000. There survived him, as his unquestioned next of kin, his sister and certain descendants of his deceased brothers. Preliminary testimony was taken in a separate proceeding in which it was conclusively shown that the alleged will was not the will of Mr. Ridley. His signature to the document was authentic, but there was a clear imposition perpetrated upon the decedent by his secretary, Lee Weinstein, and by the two subscribing witnesses. The will contained a legacy of $200,000 to Weinstein, which the three conspirators were to share. The alleged will was placed in a group of other documents for Mr. Ridley's signature. The decedent was over eighty years old. His eyesight was extremely defective. The fact that the paper was a will was never made known to him and the paper was signed by him in ignorance of the nature of the instrument or its contents. The testimony of the two subscribing witnesses to the will left no doubt as to this conclusion. Each of them has pleaded guilty to larceny of a large sum of money from Mr. Ridley in his lifetime by the fraudulent manipulation of his accounts and the procurement of his signature to checks. Both have been sentenced to prison. Weinstein, his secretary, was murdered at the same time and in the same place as Ridley. Into this train of tragedies, the claimant, Jens Nelson, has intruded. If his contentions were

sustained, he would have become entitled to the whole estate as sole next of kin. Numerous hearings were held upon the issue as to the relationship of the claimant. An adjournment was taken for the purpose of investigating his family history in Norway and Sweden, and the facts surrounding his alleged birth and residence in the State of Michigan. After the resumption of the hearings, and at the close of the case, the pretensions of the claimant were completely destroyed by evidence so convincing as to require the dismissal of his claim.

The facts in the proceeding are strangely similar to those in the recent case of *Matter of Wendel* (146 Misc. 260). In each case the estate was large. In each case there was a claim of a clandestine marriage. In each case the pretender to relationship attempted to substantiate his claims by documents which were subsequently proven to be forgeries.

In the pending case the claimant, in describing the history of his life, asserted that he was taken to Sweden shortly after the death of his mother, by his uncle, Gustaf. In the year 1881 he came to New York on the ship *Adriatic*. He was employed for a period of two months by his alleged father, the decedent here, in the stable connected with the dry goods store. In latter years he worked in various places in Westchester and Dutchess counties as a farm laborer and gardener and finally settled in Poughkeepsie, N. Y., where he resided at the time of the death of the decedent. At first, plausibility was lent to the claims of Jens Nelson by testimony as to alleged pedigree declarations made by the sisters of the decedent to the effect that the decedent had been married. Both of these sisters died some years ago. There was also testimony by one witness as to statements made by his wife, a sister of the decedent, tending to prove that the name of Mr. Ridley's wife was Orline Nelson, that she was a Norwegian and that a son was born to them. I have rejected the testimony of this witness because of his apparent bias against the Ridley family. In addition, his testimony is contradicted by other witnesses submitted by the proponent who testified to pedigree declarations tending to prove that Mr. Ridley had never been married.

The principal reliance of the claimant was upon two documents. The first purports to be the baptismal certificate of Jens Nelson. It is written in the Norwegian language. It purports to be signed by Rev. " S. L. Geelmuyden, Pastor." In this document it is stated that Jens Nelson was baptized on June 12, 1866; that he was born on May 26, 1866, and was the son of Edward A. Ridley and Orline Nelson Ridley. The place of baptism is given as the North Michigan Lumber Company, and the instrument is dated June 12,

1866. The second instrument is the death certificate of "Orline Nelson Ridley." It is dated August 10, 1866, and purports to be signed by the same pastor. It recites that she was born on March 12, 1847, and died August 10, 1866. The location is likewise given as the North Michigan Lumber Company. These certificates, Nelson claimed, had been given to him in 1881 by his uncle, Gustaf Nelson.

The testimony conclusively establishes that these two certificates were recently fabricated. Several facts in the record destroy their authenticity. There is evidence, from the appearance of the papers themselves, that they were recently written, and the testimony of experts in handwriting and in the manufacture of paper supports this conclusion. More important, however, on this phase of the case is the clear and convincing proof that the Rev. Geelmuyden, whose name is purported to be signed to them as pastor, was in Norway and not in the United States on the dates, June 12 and August 10, 1866, set forth in the certificates. From the records of the Norwegian Lutheran Church in America, which have been produced before me, it appears that Doctor Geelmuyden's real name was " Sebastian Theodore Geelmuyden," not " S. L. Geelmuyden." He was not ordained, as a minister, until late in 1866, or early in 1867. His ordination occurred in Norway. These church records show that he arrived in America in the year 1867 and was connected with parishes in and near the city of Milwaukee, Wis. Certain church records have likewise been produced containing his authentic handwriting and signature. It is plain that Nelson had some information as to the existence of Rev. Geelmuyden. It is plain also that an attempt was made on the questioned certificates to simulate his signature. When compared with the authentic standards, however, the forgeries are clumsy and utterly unlike the handwriting of the real Dr. Geelmuyden. The proof shows that the latter was a highly educated, cultured gentleman. He was a college graduate with a degree of Bachelor of Arts and later earned his Master of Arts degree. His authentic handwriting is precise and skilled, and his authentic letters and documents are almost faultless in their rhetoric and style. On the other hand, the two questioned certificates contain errors in spelling and grammar, and the style and appearance of the writing are those of an uneducated man. They are carelessly written. The conclusion clearly follows that the fabricator of these instruments knew of the existence of the real Dr. Geelmuyden, that he had a copy of his signature and used it on the documents, but in their preparation he dated the certificates one year before the real Dr. Geelmuyden even arrived in the United States.

A more important and more convincing part of the evidence entirely destroys the genuineness of these instruments. Each of the certificates contains a red wax seal, upon which there has been impressed from a metallic die, or seal, the letters " S. L. G.," which would represent the initials of Sebastian L. Geelmuyden.

It has been conclusively shown that this seal was manufactured early in January, 1934, by a jeweler in Poughkeepsie, N. Y., where the claimant then resided. Moreover, Gerald S. Reick, the jeweler who manufactured the seal, and Walter A. Atkinson, his assistant in his store, have each identified the claimant, Jens Nelson, as the person to whom the seal was delivered after its completion. The testimony of the jeweler is that Jens Nelson selected the initials and stated that he desired the die to be completed as speedily as possible. The seal was engraved upon a silver dime. One side of the coin was rubbed smooth and the initials engraved upon it. An examination of the impressions upon the original wax seals on the two certificates completely verifies the testimony of the jeweler. The milling around the edge of the coin is distinctly visible in the wax impression. There are two concentric circles inside the outer rim of the seal, which appear upon the impressions. The jeweler testified to engraving these circles. The initials have been identified as having been engraved by the jeweler. Moreover, the actual date of the sale and delivery to Nelson — January 5, 1934 — has been proven by the business records of the jeweler. On the afternoon of that day the certificates were delivered by Nelson to one of his attorneys in Poughkeepsie, N. Y. Mr. Reick is entitled to commendation for the important contribution of his evidence and his frank revelation of the fraud of Nelson.

I am also convinced that two other documents in the case were fabricated by Nelson to support his claim. One is a letter purporting to be written by his mother, dated July 20, 1866. The other is a contract claimed to have been signed by Edward A. Ridley, the decedent, on August 12, 1932. The former paper, the letter, bears in many instances close resemblance to the handwriting used in the baptismal certificate and even in the death certificate of the woman who is supposed to have written the letter.

The latter instrument is an agreement to purchase a patent for a fly trap actually invented and recorded as a patent by the claimant. The purchase price to be paid to the claimant by Mr. Ridley is stated to be $125,000. Although Mr. Ridley customarily signed his full name, the instrument is signed with a mark. The body of the instrument is in the handwriting of the claimant. It is witnessed by two persons, J. B. Mauren and W. G. Baldwin. When presented by the claimant to the attorney for the temporary administrator,

it was accompanied by affidavits purporting to be signed by each of the attesting witnesses. The originals of these affidavits have been lost or destroyed. They were not produced on the trial. But from the copies it has been shown that they were sworn to before two different notaries. Each of these notaries gave convincing evidence that Nelson, the claimant, had palmed himself off to them as the affiant in the two affidavits.

It is unnecessary to review the other evidence in the case, which so completely refutes the claim asserted here that Nelson is the son of Edward A. Ridley. His own written declarations, made long before the death of Mr. Ridley, in applications for insurance policies, to a savings bank and in a marriage license, establish that he stated that his father was Gustaf Nelson, that the maiden name of his mother was not Orline Nelson, that he was born in Sweden and not in Michigan, and that he was always known as Jens Nelson and never used the name Ridley. These declarations, made by him at a time when there was no reason to misrepresent the facts, are particularly forceful. The conclusion is inevitable that the claimant is not the son of Edward A. Ridley, nor even his illegitimate child.

The testimony and the exhibits in this proceeding have been directed by the surrogate to be forwarded to the district attorney of New York county for appropriate and expeditious action.

Respect for law and the avoidance of fraudulent attacks by impostors upon estates large and small require, in such cases, that something more effective than the mere denial of the claim should be exacted.

Submit order striking out the appearance of Jens Nelson, upon the ground that he is not a party interested in this estate, nor a next of kin of the decedent.