In the Matter of the Estate of JOHN B. McCAFFREY, Deceased.

Surrogate's Court, New York County, May 15, 1940.

*Seibert & Riggs* [*William L. Seibert* of counsel], for the petitioner.

*James S. Regan* [*James S. Regan, Thomas J. Kavanagh* and *Louis E. Lynch, Jr.,* of counsel], for the objectants.

FOLEY, S.   Two proceedings for the probate of two separate wills were initiated in this estate.   The first proceeding was based upon a will dated June 20, 1938.   After the filing of the petition, a later will was discovered by the proponent, Joseph Bernard McCaffrey. The later instrument was dated December 20, 1938.   Thereupon that paper was offered for probate by the same proponent.

The testator was survived by his three sons as his next of kin. Both instruments are similar in their dispositive provisions.   To each of two of his sons the testator gave legacies of $1,000.   To the third son, the proponent, he gave the residue of his estate.   In each instrument he appointed the proponent as executor.   The

last will contains the following clause of revocation: " I hereby revoke all former wills and codicils by me at any time made." The estate approximates two hundred thousand dollars. The two sons, who were bequeathed the relatively small pecuniary legacies, contest the admission to probate of the last will upon the ground that the testator revoked it by canceling and obliterating it " with the intent and for the purpose of revoking the same " under the terms of section 34 of the Decedent Estate Law. They contend that their father died intestate.

The body of the last will and the attestation clause are type-written. It consists of two pages. When found after the death of the testator, the first page was unmarked by any handwriting. Upon the second page appeared in typewriting, part of paragraph sixth, in which the proponent was appointed executor with provision that a trust company should act in an " advisory capacity " to him and with provision for the appointment in the event of his death of that trust company as successor executor. The seventh clause provided for a dispensation of the giving of a bond by the individual executor. Then followed an *in testimonium* clause, the signature of the testator, the attestation clause and the signatures and addresses of the three subscribing witnesses.

This entire second page has been canceled and obliterated by ink markings. Vertical lines were drawn through the matter on the upper part of the page above the signature of the testator. His signature has been canceled and obliterated by several diagonal marks. The attestation clause was canceled by six vertical lines in ink. The names of the subscribing witnesses are stricken out by a vertical line running through the three names. Their addresses have been similarly canceled and obliterated. At the foot of the page and below the names of the subscribing witnesses, there appears the following notation which is concededly in the handwriting of the testator: " N. Y. May 16, 1939. The within Will and Testament of John B. McCaffrey and any copy or duplicate is hereby annulled and cancelled — that a Will dated June 20, 1938 may now be restored to full force and effect. John B. McCaffrey."

The proponent contends that the word " so " was written by the testator after the word " cancelled " in the space designated by a dash in the context just quoted. Scrutiny of the document fails to sustain that contention. If a word was intended, it is indecipherable. In any event, the surrogate is of opinion that the inclusion of the word is not of importance.

The evidence of the subscribing witnesses establishes that both wills were validly executed. The issues as raised by the objections, by the evidence and by the contentions of counsel for the respective parties present the following questions for determination:

Was the last will of December 20, 1938, canceled and obliterated by the testator *animo revocandi?*

Was the attempted revocation conditional and ineffective, because of the testator's mistaken impression as to the law, in his notation that the prior will of June 20, 1938, " be restored to full force and effect?"

Does the doctrine of " dependent relative revocation " exist as a rule of law in our State and, if so, should it be applied?

No contention is made that the obliterating and canceling marks could have been the act of any person other than the testator. After execution, the last will had been delivered to him, apparently kept with his personal effects for some time, and then delivered by him to his son, the proponent, in its present condition to be placed in a safe deposit vault, where it was located at the date of death.

The surrogate finds upon the evidence that the will of December 20, 1938, was canceled and obliterated by the testator himself with the intent and for the purpose of revoking it.

The material parts of section 34 of the Decedent Estate Law, entitled " Revocation and cancellation of written wills," are as follows: " No will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked, or altered, otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself."

The form of obliteration and cancellation of a material part of the will which was employed here, with the specific striking out of the signature of the testator, the attestation clause and the signatures of the subscribing witnesses constitutes a revocation under the statute, where an intent to revoke is found. " The finding of the will in the testator's desk with his signature canceled raised the presumption that the cancellation was done by him with the intention of revoking it." (*Matter of Hopkins*, 172 N. Y. 360, 363.) Under that case and other pertinent authorities, the question of intent is to be determined by the trier of the facts, and the surrogate, as such trier, has based his finding here upon the facts. Other decisions have dealt with substantially similar forms and methods of cancellation and obliteration and have reached determinations of revocation. (*Matter of Parsons*, 236 N. Y. 580, affg. 204 App. Div. 879, affg. 119 Misc. 26; *Matter of Kuntz*, 140 id. 598; *Matter of Cronin*, 124 id. 848; *Matter of Barnes*, 76 id. 382.) The cancellation of the signature of the testator alone is a sufficient compliance with

the statute. (*Matter of Griffith*, 167 Misc. 366; *Matter of Dugro*, N. Y. L. J. Jan. 25, 1940.)

The proponent urges that the testator did not intend to revoke the will, unless the prior will of June 20, 1938, could be revived and made effective. That contention is overruled. The act of revocation was complete when the testator struck his signature from the document and made the other canceling marks. Thereby revocation became absolute. (*Matter of Hopkins, supra*.) Even if the notation at the bottom of the page in the testator's handwriting had been made at the time of cancellation, the mistaken belief of the testator as to the reinstatement of the prior instrument could not destroy the effect of the complete nullification of his will. But there is no evidence in the record from which the order of events may be determined or even inferred. Mr. McCaffrey might have written the addendum prior to the cancellation. He might have written it at the same time. He might also have written it afterwards. In this respect the issues here are almost identical with those in *Sanderson* v. *Norcross* (242 Mass. 43; 136 N. E. 170). There the will had been canceled by the scratching out of the signature of its maker and the drawing of lines through the signatures of the subscribing witnesses. There, as here, revocation became a question of intent. The testator had written on the margin of the instrument, " This will is void as I have made a later one." To the notation he added his signature. No later will was found, but after his death an undated, unexecuted and unattested memorandum of testamentary dispositions was discovered in his safe. The contention there made was that the testator's attempted revocation was conditional upon the validity of a new will, and that since the new will was never validly executed, the revocation of the old one never became operative. The court held that the old will had been revoked and probate was denied. The opinion in the case was written by Chief Judge RUGG, a jurist of long experience and distinguished reputation. He pointed out that courts have no power to reform wills. He referred in general to the doctrine of dependent relative revocation. It was a principle to be applied " with caution." He mentioned that the statutes of his State contain simple, clear and definite rules for the execution and revocation of wills. " Rigorous adherence to these rules will in the end be more likely to effectuate the underlying purposes of those who leave property than an attempt to extract an uncertain intent from equivocal circumstances. * * * Hypothetical or imaginary mistakes of testators cannot be corrected. * * * The only means for ascertaining the intent of the testator are the words written and the acts done by him." In his discussion of the effect

of the notation in the handwriting of the testator, he continued, " there is nothing to show the order of events." Whether the testator " wrote on the margin of the will before, or after, or at the same time he cancelled it, is not shown. One surmise is no better than another on this point. * * * It may well have been disconnected in time and dissociated in thought with the other marks on the will. * * * This record is bare of anything to indicate with the degree of certainty which must prevail when deciding the intent of a dead man as to testamentary disposition of his estate, whether this decedent intended the cancelled will to remain as his final expression of desire unless he should leave a later valid will, or whether he intended its cancellation to stand even though he left no will. The whole subject is wrapt in speculation and conjecture without proof. The cancellation of the will is clear and unmistakable. That alone is beyond peradventure."

Similarly here, the act of cancellation alone was sufficient to nullify the will. The record is barren of any oral evidence to show the time of the performance of the cancellation. The instrument itself stands without explanation by oral proof of the exact time when any of the alterations were made. If he made the notation at a time before, or after the obliteration, its effect was futile. If he made it before the actual obliteration of his signature, it was an ineffective attempt to revoke the will. (*Matter of Akers*, 173 N. Y. 620, affg. 74 App. Div. 461.) He may have actually revoked it with the intent to leave both the last will and the prior will ineffective under a true understanding of our law and with a consequent vesting of his property by intestacy in his three sons. If he revoked the will, first by obliteration and then attempted by a notation subsequently made to revive his prior will, the act in making the notation of revival, without publication and attestation, as required by section 41 of the Decedent Estate Law, was worthless. But regardless of the subsequent notation, his act of complete revocation under the statutory procedure forever destroyed the will which had been previously obliterated and canceled.

If he made the notation at the same time as the obliteration it was equally futile to save the will from his own act in revoking it. Even in the notation Mr. McCaffrey declared that it was " annulled and cancelled." The intent to revoke and the completed act under the statute again destroyed the instrument forever. His apparent ignorance of the law in respect of a revival of his prior will may not be deemed to be a condition, precedent or contemporaneous, sufficient to undo his unequivocal act of revocation. His prior will could only have been revived and given force by a new execution which complied with the statutory formalities.

Section 41 of the Decedent Estate Law provides: " If, after the making of any will, the testator shall duly make and execute a second will, the destruction, canceling or revocation of such second will, shall not revive the first will, unless it appear by the terms of such revocation, that it was his intention to revive and give effect to his first will; or unless after such destruction, canceling or revocation, he shall duly republish his first will." The words " by the terms of such revocation " are limited to a revocation in writing. (*Matter of Stickney*, 161 N. Y. 42, 45, affg. 31 App. Div. 381.) Where there has been a cancellation or destruction, the former will must be republished with the same formalities. (*Matter of Stickney, supra; Matter of O'Donovan*, 168 Misc. 362.)

In *Matter of Stickney* (*supra*) the testator executed a first will. He subsequently made a second will in which he revoked the former instrument. He afterwards burnt the later will. There was testimony that he stated to several persons who were not, however, the subscribing witnesses to the first will, that the first will represented his real wishes. The republication of the revoked will was held insufficient in law. In the Court of Appeals the opinion pointed out that the requirements of the statute must be observed in republication. " So far as its publication is concerned, a revoked will is as if it had never been published. * * * We see no reason why the requirements applicable to the publication of a will should not equally apply to its republication. Any other rule would be in conflict with the obvious spirit and purpose of the statute, and would destroy the safeguards against fraud and improvidence by which the making and publication of wills have been so carefully guarded."

That court has likewise held in several cases that our Statute of Wills is part of the public policy of the State. It cannot be broken down by arguments of expediency or by appeals to sentiment. The intention of the decedent cannot be carried out where the law has not been obeyed. The existence of good faith does not affect the question " as the intention of the Legislature, and not that of the testator, governed." (*Matter of Andrews*, 162 N. Y. 1; *Matter of Whitney*, 153 id. 259.) To yield " to the suggestion that it was an honest attempt to make a will, would have been a practical repeal of the statute." (*Matter of Andrews, supra*, p. 8.)

Finally, the surrogate holds that the doctrine of " dependent relative revocation " has never been recognized in this State, and cannot be applied to the facts here. It has been mentioned or discussed in certain cases. (*Ely* v. *Megie*, 219 N. Y. 112; *Matter of Raisbeck*, 52 Misc. 279; *Matter of Tremain*, 169 id. 549; affd., 257 App. Div. 996; affd., 282 N. Y. 485; *Matter of Tousey*, 34 Misc. 363; *McPherson* v. *Clark*, 3 Bradf. 92.) It has never been directly

sustained as part of our law of wills by any binding authority of the Court of Appeals.

Since " dependent relative revocation " is a general term that is applied to a wide variety of cases, it is difficult to express its definition except in a general way. Perhaps the earliest expression is found in Powell on Devises ([1st ed.] p. 637): " This principle, that the effect of the obliteration, cancelling, etc., depends upon the mind with which it is done, having been pursued in all its consequences, has introduced another distinction not yet taken notice of; namely, *that* of dependent relative revocations, in which the act of cancelling, etc., being done with reference to another act meant to be an effectual disposition, will be a revocation or not, according as the relative act is efficacious or not." (See also, Williams on Executors [9th Eng. ed.], p. 200.) The explanation of the doctrine found in many of the decisions must be read in the light of the factual situations there presented, since the term has been applied to cases only more or less generally related.

The tenuous refinements of the doctrine and its misconception in many cases are discussed in the comprehensive and analytical article of Professor Warren, entitled " Dependent Relative Revocation." (33 Harv. L. Rev. 337.) He pointed out that under this title the text writers have grouped and considered a number of cases more or less closely related. A testator destroys his will intending to make a new one, but does not, or the new document is invalid when executed. He tears up a revoking will under the impression that he thereby revives his first testament. He crosses out a portion of his will and interlines new matter which, being unsigned and unwitnessed, is, of course, of no effect. He makes a new will inconsistent with the old one, which contains, or does not contain, a revoking clause, and the new will fails from defective execution or from inability of the devisee to take. In some of the books, there is also included the case of a second revoking will being set aside because the ground upon which the testator proceeded and which appeared in the will itself has turned out to be false. By other writers this class has been separately treated.

" It is believed that this classification is loose and misleading, that the term ' dependent relative revocation,' while not entirely devoid of inherent sense, tends toward the treatment of different subjects under a single principle, and should be abandoned for more specific and discriminating nomenclature." (Warren, Dependent Relative Revocation, *supra*, p. 338.) An analysis of the many cases wherein decision was fashioned through the instrumentality of this phrase, would not serve to clarify the principle. One cannot, after reading them, quarrel with the conclusion that " once

again the panacea of a sonorous phrase or foreign word has tended only to obscure the common law, and to confuse judges, textwriters" as well as professors of law. (33 Harv. L. Rev. *supra*, at p. 357.) The doctrine appears to have originated in the courts of England. It is followed in some of the States in America. It " is based on the principle that all acts by which a testator may physically destroy or mutilate a testamentary instrument are in their nature equivocal. They may be the result of accident, or, if intentional, of various intentions. It is, therefore, necessary in each case to study the act done by the light of the circumstances under which it occurred, and the declarations of the testator with which it may have been accompanied." (*Powell* v. *Powell*, 1 P. & M. 209, 212.) When a will is canceled, obliterated or otherwise revoked for the purpose of validating another document, or making another testamentary disposition, and the purpose fails for want of compliance with the statute, the act of revocation is said to be dependent upon the effectuation of the ultimate object, and is inoperative if that cannot be attained. This principle seems to be based upon the theory that since the testator performed the revocation for the purpose of making some other disposition of his property in place of that made in the canceled will, it is to be supposed that he would not have revoked his will if he had been aware that his proposed substitution was futile, but that he would rather have his original testamentary provisions remain unchanged.

The question, then, involves a consideration of the testator's mind and intention. Whether the result which the courts usually reach in such cases represents the actual desires of the testator is extremely doubtful. In some cases, whether he would prefer complete intestacy or the revoked will is a matter of pure conjecture. The authorities seem to indicate that the courts should undertake to determine how effect can best be given to the testator's probable ultimate intention, and then to treat the revocation as operative or inoperative accordingly.

The difficulties thus presented are apparent when we are dealing with the mind of a person no longer in existence and are attempting to draw fine inferences as to its condition contemporaneously with the act of alleged revocation.

An examination of the cases in the courts of England demonstrates that the trier of the facts is permitted to substitute a finding of speculative or probable intent under the varying circumstances of each case as a substitute for the rule of certainty which has existed in New York for over a century and is based upon compliance with the statute as to revocation, regardless of judicial whim, expediency or an attempt to remake a will. Moreover, despite

the enactment of the Wills Act in 1837 in England, which is almost identical with section 34 of our Decedent Estate Law, the English courts have continued to apply the test of dependent relative revocation. Thus, in *Powell* v. *Powell* (*supra*), decided in 1866, the testator made a will in 1862. He revoked it by a second will made in 1864. In 1865 he destroyed the later will, stating that his object was to set up the former will of 1862. Under the authority of the prior cases involving dependent relative revocation, the court held that the revocation being conditional, was ineffective, and that the will of 1864 was entitled to probate. " It is clear that in such case the ' *animus revocandi* ' had only a conditional existence, the condition being the validity of the paper intended to be substituted."

In a later case in 1925 the testator made a will shortly before he started on a visit to America in which he gave his property to his wife. After his return he burned the will in the presence of his wife with the statement " it is no good now. We have returned safely and it is all yours." His belief that the property would be hers in the absence of a will was wrong since his father was the sole heir by intestacy. Despite the unequivocal act of revocation caused by the burning of the instrument, the court held the revocation conditional, only, and decided that since the condition was not fulfilled, the revocation did not become effective. (*Estate of Southerden*, 1925 Prob. Div. 177.)

The danger of a determination based upon such evidence must be obvious to any attorney who is a specialist in the law of wills or to an experienced trier of the facts in probate cases. For in each proceeding the court or the jury, if there be one, would be entitled to consider the presence of an intent to revoke, or the absence of it, by the conjecture as to whether the testator preferred the persons who would take as beneficiaries under the will or under the prior instrument, or those who would take by intestacy. In the trial of a probate contest we are accustomed to charge the jury that they must not substitute their own judgment as to a disposition of a testator's property in place of his plan of distribution. Yet many of the cases where dependent relative revocation has been applied show that the judicial mind has attempted to steer that course.

The facts in the decision of the Supreme Court of Pennsylvania in *Matter of Emernecker's Estate* (218 Penn. St. 369; 67 A. 701) demonstrate the extent to which the rule of dependent or conditional inoperative revocation, if recognized, could be unduly extended. In that case the testatrix had the mistaken popular notion that to disinherit certain heirs they must be mentioned in the will and given a nominal legacy. This belief was confirmed by advice given her by friends. She became uneasy over the validity of her will

which did not mention certain of her children as legatees in any amount. She destroyed her will stating that she would have a new one drawn in which she would give each child one dollar and thus make her testamentary plan valid. Before she could do so she died. The court held that her will had been revoked. " She knew what she was doing and the effect of it, and she did it *animo revocandi*, with intent to produce that effect. Her reasons were not matter of inquiry for the court." And again, " It seems to be a hard case, but there is no remedy, without making the bad law which such cases are said to invite."

Whatever may be the special form of the statutes or public policy of other jurisdictions, it is clear that our State from its earliest history has striven for certainty in place of conjecture. (*Matter of Andrews, supra; Matter of Whitney, supra.*) It is stated by the Court of Appeals in *Matter of Stickney* (*supra*) that the rule which forbids a departure from the statutory restrictions as to execution, revocation and republication is based upon " the obvious spirit and purpose of the statute."

But to return to the question directly involved here, it is the duty of the trier of the facts under our statute to determine the presence or absence of an actual intent to revoke the will. Cases may occur also where indisputably the testator has revoked a will under the mistaken belief that it is some other form of paper. Mistake or accident may thus affect the transaction. I apprehend that under our law in such a situation, no difficulty in reaching a finding that the will was not revoked would arise. That situation is no different from a case where a person signs a will under the mistaken impression that it is some other form of instrument. (*Matter of Ridley,* 151 Misc. 474.) The latter case is clearly distinguishable, however, from the present one, in which the sole evidence is the instrument itself and the notation of the testator is attempted to be employed to defeat an unequivocal act of revocation by the inference of a condition.

When a testator cancels his will under the mistaken impression that he can thereby revive an earlier will, his act cannot be said to be conditional. He believes that he can accomplish that result and at the same time he has the clear intention of revoking and putting an end to his later will. To say that his act is conditional is to indulge in a fiction, which can be justified alone by a desire based upon expediency to effectuate what the trier of the facts conceives to be the testator's wishes. Though the end may be laudable, yet the means ought not to be pursued where it seeks to accomplish indirectly that which can be done directly under our law.

The history of our statutes, the decisions and our public policy exclude the existence of the doctrine of dependent relative revocation as a rule of law in this State.

In conclusion, the testator here canceled and obliterated his will with intent to revoke it. The prior will had been revoked by the express terms of the canceled later will. His attempt to revive the former will was abortive. Both wills are, therefore, denied probate and intestacy is decreed

Tax costs and submit decree on notice accordingly.