In the Matter of the Estate of WILLIAM J. HILL, Deceased.

Surrogate's Court, New York County, May 23, 1941.

*Michael E. Rosenstein* [*Abraham Lehman* and *Henry C. Lehman* of counsel], for the proponent.

*Hannibal M. Fiore*, for the contestant.

*James D. C. Murray*, for Lena Hill, legatee.

*Grace Kelly Santo*, special guardian.

FOLEY, S. At the close of the trial of the contested probate proceeding, the surrogate stated upon the minutes the determinations made by him and the reasons upon which they were based. An extended discussion of the facts in this formal decision is, therefore, deemed unnecessary. The evidence establishes that the will, dated December 15, 1938, was duly executed by the testator and that he was of sound mind and free from undue influence when he signed it on December 15, 1938. It has also been shown that the two codicils to the will were duly executed, the first in July, 1939,

and the second in September of that year. Because of the subsequent destruction of the original and the copies of these codicils the real dates of execution and the exact tenor of the codicils are impossible of ascertainment. Their general contents, however, have been proved to the satisfaction of the surrogate.

The first codicil entirely eliminated the proponent, Harry Evans, from the testamentary plan. In it the testator revoked his prior appointment of Evans as the executor, as a cotrustee and as a contingent remainderman of the trusts created by the will.

In the second codicil Evans was restored as executor and cotrustee, but was not reinstated as a contingent remainderman. Under the first codicil the American Society of Composers, Authors and Publishers, popularly known as " ASCAP," of which the decedent was a member, was made the contingent remainderman in place of Evans. That provision remained unchanged in the second codicil.

The surrogate finds that the two codicils were destroyed by the testator with deliberate intent to revoke them. (Dec. Est. Law, § 34.)

The pertinent rules as to the effect of the revocation of a later testamentary instrument upon a prior instrument of similar nature may be restated:

*First,* the revocation of a subsequent will does not revive a prior will which was revoked by the later instrument. (*Matter of Cunnion,* 201 N. Y. 123; *Osburn* v. *Rochester Trust & S. D. Co.,* 209 id. 54; *Matter of McCaffrey,* 174 Misc. 162; Dec. Est. Law, § 41.)

*Second,* in order for the prior will to become completely effective in all its terms it must be republished and re-executed with the same formalities as were required for its original execution. (Dec. Est. Law, § 41; *Matter of Stickney,* 161 N. Y. 42, affg. 31 App. Div. 382; *Matter of Flynn,* 174 Misc. 565; *Matter of O'Donovan,* 168 id. 362.)

*Third,* the revocation of a codicil does not operate as a revocation of the antecedent will. (*Osburn* v. *Rochester Trust & S. D. Co., supra.*)

*Fourth,* the terms of the will remain effective except as they have been modified by the terms of the revoked codicil or codicils. (*Osburn* v *Rochester Trust & S. D. Co., supra.*)

In the *Osburn* case (*supra*) the terms of the codicil were simple. They provided solely for a legacy to a person in the sum of $1,000. The codicil was revoked by destruction. As to the effect of the revocation of the codicil, Judge HISCOCK said: " This revocation was consummated at the moment when the codicil was executed and published and thereafter the will was to that extent annulled.

After this revocation had thus been consummated by the execution of the codicil the will could not be restored to its original form and tenor simply by the revocation of the codicil. A revocation of the revocation could not thus be accomplished. The effect of this is that the testatrix died intestate as to one thousand dollars."

Similarly, here, the complete elimination of Evans from the plan of the will made the following changes in it.

Since he was the only executor appointed in the instrument, the selection of an adminsitrator *c. t. a.* became necessary by operation of law.

His original appointment as cotrustee was nullified and the remaining trustee, a bank, became eligible for appointment if it desired to qualify as trustee. If it renounces, a substitute trustee will be appointed.

The elimination of Harry Evans as a contingent remainderman and the revocation of the second codicil appointing the Society in his place as contingent remainderman left a void in the testamentary plan. If the remainders shall not vest under the primary dispositions in the daughter of the decedent or in her issue, intestacy must necessarily result. In that eventuality the principal of the fund will have vested as of the death of the testator in the widow and child as the statutory distributees. Except as modified by the codicils, the terms of the will must stand.

The proponent attempted to overcome the factual and legal situation of the amended and incomplete will by adducing evidence that after the revocation of the two codicils, a republication and re-execution of the will was made by the testator in the presence of the original subscribing witnesses on May 10, 1940. The surrogate, as the trier of the facts, has rejected the version of each of the subscribing witnesses to this alleged transaction. Their testimony on this phase of the case is unworthy of belief. It is completely destroyed by the inconsistent and contradictory statements made by them in their original depositions filed and sworn to early in the course of the probate proceeding. It is refuted by the petition of the proponent. The subscribing witnesses were examined before trial and neither of them revealed or even mentioned the alleged second publication of the will.

It is significant also that neither in the petition nor in the depositions of the subscribing witnesses nor in their examination before trial, did they disclose the execution of the codicils which each of them had attested. The first mention of the execution of these codicils and of the alleged republication took place at the trial. In the opinion of the surrogate the story of republication was invented shortly before the time of the trial and after the discovery

from an examination of the applicable law, that Evans had been eliminated by the testator from any connect on with the estate.

The surrogate finds as a fact that the will originally executed on December 15, 1938, was not republished and re-executed on May 10, 1940, or on any other date.

The will is admitted to probate without the matter which was deleted by the codicils.

The decree to be entered herein shall set forth in full the modified terms of the will.

A responsible person competent to protect the rights of the widow, the infant child of the testator and of the other beneficiary, will be appointed administrator *c. t. a.* The representatives of the beneficiaries may submit in affidavits the name of a person recommended for appointment. The surrogate will thereafter make the final selection.

Tax costs and submit decree on notice accordingly.