In the Matter of the Probate of the Will of VERGIE B. ANDREWS, Deceased.

Surrogate's Court, Broome County, April 15, 1949.

*Leon F. Simmonds* and *Robert D. Lackland* for Earle J. Saddlemire, proponent.

*Leslie J. Waite* and *Stuart M. Waite* for Herman Saddlemire, contestant.

PAGE, S. The propounded will was executed by decedent July 31, 1947. It was left in the custody of Leon F. Simmonds, the attorney who drafted it. It remained in his possession until presented for probate herein. There is no question as to its validity in its inception.

It appears that decedent was married at the tender age of about fifty-five to a man named William C. Andrews, who still survives. On July 31, 1947, and for some time previous thereto, she had been having marital (sometimes also known as " martial ") trouble. It appears that this circumstance was the main reason for her having executed the will.

On or about December 28, 1947, decedent retained Raymond G. Walker, an attorney, of Newark Valley, N. Y., to represent her in carrying on hostilities against her husband, consisting of bringing a separation action against him. This resulted in a decree in favor of decedent, entered April 20, 1948. In connection with this, she obtained a renunciation of all his inchoate rights if he were to turn out to be the surviving spouse. William C. Andrews originally appeared herein, but was " let out " on motion pursuant to section 87 of the Decedent Estate Law, together with his renunciation of spousal rights, by which he had, in effect, relinquished any and all standing or status as a necessary or proper party herein and, consequently, as a prospective objectant.

During and near the end of the pendency of the separation action, probably sometime in March or April, 1948, decedent called attorney Walker on the telephone, requesting that he stop at her house in Endicott to make a will for her. The testimony of Mr. Walker is to the effect that two or three days later he did this.

The issue to be determined is joined by objection filed by Herman Saddlemire, brother of decedent, based on the alleged execution of a subsequent will. This alleged later will is not offered for probate. It cannot be found. Its provisions are not in evidence because there was no copy made of it and the witnesses for objectant testified to their nonrecollection of anything whatever as to its contents. It was executed at the home of decedent and left with her. It must be presumed to have been destroyed by her and, thereby, revoked. (*Matter of Staiger,* 243 N. Y. 468; *Matter of Kennedy,* 167 N. Y. 163.)

The presumed revocation of the second will did not and could not revive the first (Decedent Estate Law, § 41). There is no evidence that the will of July 31, 1947, was ever republished. Its eligibility to probate depends entirely on whether there ever was a subsequent will duly executed by decedent and, if so, whether the latter operated as a revocation of the former. If both of these points of fact are determined in the affirmative, the original will became and remains a dead instrument. The extensively shown attitude of decedent that she regarded it as being in full force and effect right up to the moment of her demise would not affect this conclusion.

This case presents a problem of proof as to each of the above-mentioned issues of fact. Their resolution is dependent on a determination of whether or not the objectant has supported his burden of proof (*Matter of Smith,* 161 Misc. 194; *Matter of Parker,* 100 Misc. 219; *Mairs* v. *Freeman,* 3 Redf. 181) by a fair preponderance of evidence generally and, particularly, as affected by special requirements appertaining to testamentations (Decedent Estate Law § 21), and their revocations (Decedent Estate Law § 34).

The theory of respondent-objectant is based on authority such as is set forth in section 369 of David's New York Law of Wills (1923 ed.), which states: " § 369. *Efficacy of Later Instrument — Offer for Probate — Effect of Invalidity.*— A writing which is testamentary in character may be effective as a revocation of a previously executed instrument, and yet fail in itself as a will. There is nothing in the statute which requires that all or any of the provisions of the later instrument shall be operative as a testamentary disposition of the decedent's estate. Accordingly, a later testamentary writing will work a revocation of an earlier instrument, although it fails by reason of the fact that the beneficiary is incompetent to take the property. Again, an instrument which itself has been revoked may be **operative as a revocation of a previously executed writing.**

Similarly, the later instrument may be effective to revoke the earlier writing, although it may never have been offered for probate, and has been lost or destroyed ", citing *Matter of Goldsticker* (192 N. Y. 35, affg. 123 App. Div. 474, affg. 54 Misc. 175); *Matter of Pinckney* (1 Tuck. 436); *Canfield* v. *Crandall* (4 Dem. 111); *Matter of Barnes* (70 App. Div. 523); *Altrock* v. *Vandenburgh* (25 N. Y. S. 851). Along this same line, also see section 371 of same text and cases there cited.

Other cases in this general trend are: *Matter of Wissman* (135 Misc. 35); *Matter of Ford* (135 Misc. 630); *Matter of Myers* (28 Misc. 359); *Matter of Kiltz* (125 Misc. 475); *Matter of Moore* (137 Misc. 522); *Matter of Backus* (49 App. Div. 410); *Matter of Fogarty* (155 Misc. 727); *Matter of McCaffrey* (174 Misc. 162); *Matter of Hill* (176 Misc. 774); *Matter of Wylie* (162 App. Div. 574); *Matter of Schmidt* (63 N. Y. S. 2d 809). There does not appear to have been any instance in this set of cases where the court was not justifiably satisfied both of the factum of the subsequent will and its revocatory effect upon the first.

A case which appears to be particularly relied upon by objectant is *Matter of Wear* (131 App. Div. 875 [1909, 2d Dept.]). In this case testator had executed a will June 18, 1900. In September, 1904, he saw the attorney who drew the first, and had a second will drafted. The first will had contained a revocation clause. The second was patterned after the first. There appears to have been no question but that it also contained a revocation clause. Upon its execution, possession of the later will was taken by testator. He died shortly thereafter, but the second will could not be found. The first was offered for probate. Objection that the first will had been revoked by the second was sustained by the Surrogate. This determination was made upon proof by one witness only (the other having predeceased the testator) that the second will had been duly executed.

On appeal it was contended by proponent-appellant that proof of the second will was insufficient to warrant its operation as a revocation of the first; that such proof must be of the character required by sections 1865 and 2621 of the Code of Civil Procedure (see now Surrogate's Ct. Act, § 143), that is, in accordance with provisions in relation to proof of a lost or destroyed will, viz., " by at least two credible witnesses, a correct copy or draft being equivalent to one witness." But the Appellate Division affirmed the Surrogate, holding that, since no attempt was being made to *probate* the second will, the only requirement to be

considered was satisfactory proof of its due execution and that that could, one witness being dead, consist of the testimony of the surviving witness, the same as in an ordinary probate; that the proof was not required to conform to special requisites as in the case of a lost will, but only with the minimum proof as in cases where the testimony of a deceased, or otherwise unavailable, witness is dispensed with (Surrogate's Ct. Act, § 142).

The respondent-objectant contends that the facts of the *Wear* case (*supra*) are so closely analogous to the facts of the present case that, if the former was determined upon sound principle, the latter must be also governed accordingly.

However, in considering the doctrine enunciated in the *Wear* case, we must begin by looking at comparative facts and circumstances. Here there is no disposition to require proof of the second will of the specifications of section 143 of the Surrogate's Court Act, but only that a second will was validly executed and that it operated to produce an immediate revocation of the first. In that case, the fact that one of two attesting witnesses had predeceased the testator is to be compared with the present fact that such does not appear to have been the situation here. Apparently, also, in the *Wear* case, the attorney-witness was able to and did testify much more positively than is true of the present case. Moreover, in the *Wear* case, the finding that the second will did in fact contain a revocation clause seems not to have been an issue such as it is in the present instance.

Upon obvious considerations of public concern in relation to wills — to forestall wide-open temptations to commit fraud — there is quite a group of cases which are strongly to the effect that proof of a subsequent will and its competency to operate as a revocation of an earlier will must be " strong and convincing ". This is a very salutary safeguard in cases where a subsequent will, not physically in evidence, is alleged to have revoked an otherwise perfectly good former will. Illustrative cases are: *Matter of Dake* (75 App. Div. 403); *Matter of Palmer* (122 Misc. 177); *Matter of Cunnion* (135 App. Div. 864, affd. 201 N. Y. 123); *Matter of Logasa* (161 Misc. 774); *Matter of McConihe* (123 Misc. 318 [1924]); *Matter of Williams* (34 Misc. 748 [1901]).

The blended tenor of the last above-cited group of cases is to the effect that it must be adequately shown that the instrument of revocation of a prior will must itself have been duly executed in accordance with all requirements of a testamentary instrument and have contained provisions so repugnant to the

precedent will as to amount to a clearly implied revocation thereof, or else an express revocation must be proved. Our present problem requires, therefore, that, in view of the unique facts and circumstances of the present case, we give careful consideration to the sufficiency of proof of the alleged will executed under the direction of attorney Walker, supposed to have occurred some time in March or April, 1948.

It is a matter of important public policy that a testator should not be exposed to the frustration of his testamentary provisions by the too facile acceptance of oral testimony to the effect that his will had been revoked by a later alleged, but missing, will under some such circumstances as those by which we are confronted in the present instance. A person, having duly executed his will, should not have to worry about this. He should be able to feel some sense of security and reassurement as to safely reposing confidence in probate courts to protect his solemn directions in relation to the posthumous devolution of his earthly possessions. This is especially true in a case where (as here) neither the alleged revoking instrument, nor a proven copy thereof, is produced. Courts must be conservative and cautious in dealing with denouements such as this. Otherwise, perjury of a variety that would be practically prosecution-proof would be encouraged. Although we do not, in the slightest degree, suspect anything of the sort in this instance, even so, the nature of the situation is such as always demands careful and cautious handling.

It is strenuously contended by proponent that there never was even any paper purporting to be a second will, or, if the court should choose to think there might have been, then that the objectant has not supported his burden of proof to an extent that could possibly be accepted as a minimum compliance therewith.

The array of reasons in support of proponent's position include quite a number of established considerations. The decedent left the custody of the propounded will with the attorney who drew it, and this was left undisturbed until after her death. Her diary or personal notebook made several references to *this* will — never to any other. She frequently discussed *this* will, but never any other, with her intimates. She wrote a note, found folded so the writing could not be overlooked, at the top of contents of her personal strongbox in which she kept her valuable papers, " You will find my last will & testament at Simmond Law Office ".

But these circumstances, even in their composite effect, are not determinative. The deceased might have destroyed the Walker will almost immediately after its execution. Being uneducated in the fine points of probate law, she might, very naturally, have assumed that her previous will would remain effective, or have never given a thought to the possibility that it might ever enter the mind of anyone concerned with her estate that she had signed another will.

In addition, the proponent vigorously contends that, although the two supposed attesting witnesses were produced and testified on the part of objectant, his assertion of a second will is incredible in that details as to its execution have not been substantiated by any very appreciable direct testimony, indicating that the strictly enforced requirements as to the formalities of execution as to the alleged subsequent will have been established even as to a single one of them.

The first major criterion is identified with the question as to whether this alleged last will was or was not executed in accordance with all required formalities peculiar to testamentations.

The formalities with which we are concerned in this connection are stated in section 21 of the Decedent Estate Law. An analysis of this section shows there are seven distinct points which must be observed, viz., (1) subscribed by testator at the end; (2) such subscription must be affixed or acknowledged in the presence of the attesting witnesses; (3) at the same time the testator must declare the instrument as his will; (4) there must be more than a single witness; (5) each witness must sign his name; (6) each witness' signature must be affixed at the end of the will; (7) this must be done at the request of the testator.

Although the observance of each of the required formalities is not required to be in accordance with some strict ritualistic procedure, yet there must be a substantial and acceptable compliance as to each and every one of the seven points statutorily prescribed.

This leads us to an examination and evaluation of objectant's evidence as to the execution of the alleged second will. This consists entirely of testimony of attorney Walker, supplemented to a very slight extent by the testimony of his wife, Helen J. Walker.

The testimony of these witnesses, taken as a whole, is a masterpiece of vagueness. Yet, sometimes this very quality may tend to indicate the honesty and sincerity of a witness in

rendering his testimony. At least in this case we find none of the glib pseudo-positiveness of a witness engaged in an endeavor to support a fabrication. Mr. Walker certainly appeared to have had no motive, consciously or unconsciously, to testify in a manner other than frankly stating precisely his recollection, and that it did not serve him as to details in connection with the execution of the alleged will concerning which he testified. He did not testify positively to any ultimate fact except that, some time during the pendency of her separation action, at her request, he made a will for decedent. Since he had never met her until several months after the date of the first will, there can, at least, be no question but that the second will, if any, postdated the first.

Surrogates' Courts, even more than others, because of the nature of proceedings in estates cases, the much more frequent blockade of testimony because of section 347 of the Civil Practice Act, are obliged to proceed by way of presumptions and inferences. Surrogates must and constantly do deal with probabilities arising from inferences. (For an instructive dissertation along this line, see the writing of Surrogate FOWLER in *Matter of Rosenthal*, 100 Misc. 84.)

In cases where a will is executed under the direction of an attorney possessed of a modicum of competence, the omission of any one of the prescribed formalities would be very unlikely to occur. It was shown by the testimony of attorney Walker that he was experienced in drafting wills, that he had adopted a well-habituated procedure sufficient to insure compliance with required formalities; that he followed his accustomed practice in that regard in the present instance.

The strongest circumstance in support of the factum of a second will in this case is that its execution was supervised by an attorney at law. In *Matter of Cottrell* (95 N. Y. 329, 339) the Court of Appeals stated: " It was always considered to afford a strong presumption of compliance with the requirements of the statute, in relation to the execution of wills, that they had been conducted under the supervision of experienced persons, familiar not only with the forms required by the law, but also with the importance of a strict adherence thereto."

Mr. Walker recalled that he was one of the witnesses, but he had no independent recollection as to who was the other one. He thought it was a neighbor woman or else his wife. On his second appearance herein, he had practically ruled out the possibility of the neighbor woman's having been a witness and concluded that it " must have been " his wife, Helen J. Walker.

Mrs. Walker was produced as a witness for respondent and testified that she had no recollection of any relevant fact whatever except that she had appeared once with her husband at decedent's house and that the only thing that she could swear to was that she had affixed her signature to some paper, which, she believed or assumed, was a will.

It is very true that probate courts generally should and do resort to practical solutions in instances where witnesses are forgetful. This well-established policy is shown by numerous cases exemplified as follows: *Matter of Katz* (277 N. Y. 470); *Matter of Fabricius* (155 Misc. 617); *Matter of Price* (254 App. Div. 477); *Matter of Hammond* (124 Misc. 116); *Matter of Lane* (234 App. Div. 775).

The predominating consideration involved in cases, where attesting witnesses proved to be forgetful, or hostile, and an attorney's testimony has been accorded great weight, was to avoid defeat of a decedent's will. Here it is just the opposite. Moreover, generally, in these cases, the instrument in question was before the court. Its physical appearance was examinable, provided " real " evidence. In most instances there was an attestation certificate, usually, a circumstance of great weight (Surrogate's Ct. Act, § 142; *Matter of Cottrell, supra; Trustees of Theol. Seminary of Auburn* v. *Calhoun,* 25 N. Y. 422; *Matter of Nelson,* 141 N. Y. 152; *Matter of Katz, supra*). In any event there was handwriting to be examined and its genuineness determined.

Also, there is another major consideration to be taken into account. In all proceedings for probate, at least two attesting witnesses must be produced (Surrogate's Ct. Act, § 141), *or* the nonproduction of one or both properly explained (Surrogate's Ct. Act, § 142). Here there is some, though perhaps not very great, doubt as to whether Mrs. Walker was an attesting witness. All she recalls is that she signed her name to some paper at the deceased's home and in her presence. She does not deny that the paper was a will of deceased, expressed herself as thinking very likely it was. But, at the time of the will, attorney Walker was representing deceased in a separation action in connection with which he had required papers to be signed by deceased, also notarized. His wife was a notary public, at least in her own county, and accustomed to accompanying him. Attorney Walker doesn't know whether the other witness was his wife or a Mrs. Bidwell, a neighbor. The latter was not produced. The " best guess " of each of the witnesses who were produced is that Mrs. Walker was the other witness.

But, although a very probable surmise, yet it is only a surmise, something somewhat less than acceptable proof in support of a satisfactory conclusion as to the combined requirements of sections 141 and 142 of the Surrogate's Court Act.

I am much inclined to think that the requirements of sections 141 and 142 of the Surrogate's Court Act, in combination, were legislatively intended to be observed quite rigidly; that, in any and every probate, no less than two attesting witnesses must be " present or accounted for "; that there can be no " guess work " as to definitely identifying them; that, if one or both are not produced, then a reason prescribed by section 142 of the Surrogate's Court Act, upon which an order dispensing with testimony may be based, must be shown. The slight uncertainty here as to who, besides attorney Walker, was one of the two witnesses, together with the general vagueness as to details of the execution of the second will, results in a situation such that, although the composite demonstration may fall but little short of sufficiency, yet it is somewhat short of the standard implicit in a proper regard for the direction of subdivision 1 of section 144 of the Surrogate's Court Act (Surrogate to be satisfied). Although " almost persuaded ", I feel in duty bound to decline to find that the proof as to the so-called Walker will is in all respects quite sufficient.

Over and beyond and in addition to a sufficiency of proof as to the factum of the alleged second will, we must also carefully consider whether, even if such will were to be regarded as sufficiently established, we would be justified in determining that it operated as a revocation of the propounded will.

Concededly, there is no proof whatever as to the provisions of the second will. Therefore, we would be drifting into the realm of pure speculation were we to assume to determine that its provisions were so repugnant to the precedent will as to operate as a revocation solely for that reason. Although two, purportedly, independent wills, the latter of which does not expressly revoke the former, and both of which may be read together as a single testamentary instrument, are comparatively rare, yet they are not unknown. It is recognized by authority that, where reasonable and practicable, two or more wills may be probated and effectuated together in the same way that a will and one or more codicils are read and construed together. (*Matter of Cunnion*, 201 N. Y. 123, *supra*.) In any event, in the present case, we would be without any justification whatever to conclude that the first will was, inferentially, revoked by the second.

The only remaining question is as to whether or not there was an express revocation clause contained in the second will. As to this question, attorney Walker testified that he had written in a revocation clause. But further questioning developed that he had no independent recollection of doing so — merely that he habitually wrote revocation clauses in wills.

In this connection it seems important to remember that the document was written away from the attorney's office, in the home of the deceased; that the attorney typed it out himself on a small typewriter he brought with him. It was written on a so-called " Tuttle " form containing no printed matter except the heading at the top, " Last Will and Testament ". It, therefore, had to be written out completely. If the testimony had been that he had used one of the forms containing the usual printed words, " Lastly, I hereby appoint (blank) as execut——— of this my last will and testament, *hereby revoking all former wills by me made* ", it would be an almost certain indication that the will of March or April, 1948, expressly revoked all previous wills. And, whether she fully understood it or not, the language would now necessarily be deemed that of the testatrix and all interested parties bound accordingly.

In view of all the circumstances under which the will was drafted and executed, it is very seriously doubtful that an express revocation clause was written in. It may be somewhat probable — but it is also, somewhat more than somewhat, improbable. The burden of proof as to this is not sustained and cannot be deemed sustained with so vital a part resting on little, if anything, more than a speculation that maybe an express revocation of the first might have been written in the second will.

The foregoing extensive consideration of the established facts and circumstances, and the application to them of pertinent provisions and principles of probate law, brings me to the conclusion that the objection to probate must be dismissed and that a decree admitting the propounded will to probate may be entered.

Settle decree accordingly.